137 P.3d 450

**Carol L. GUNTER, Claimant–Appellant,**

v.

**MAGIC VALLEY REGIONAL MEDICAL CENTER, Employer, and Idaho Commerce & Labor, Defendants–Respondents.**

**No. 31911.**

Supreme Court of Idaho, Boise, May 2006 Term.

June 6, 2006.

Law Offices of Cynthia J. Woolley, PLLC., Ketchum, for appellant. Cynthia J. Woolley argued.

Taylor Law Offices, P.A., Twin Falls, for respondents. Angela Taylor Pitts argued.

BURDICK, Justice.

Carol L. Gunter (Gunter) appeals from a decision of the Industrial Commission (Commission) denying her unemployment compensation benefits. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Gunter worked at Magic Valley Regional Medical Center (MVRMC) as a registered nurse from March, 2002 until August 3, 2004. During the last three months of her employment Gunter received two written warnings for misconduct, and a final warning and was discharged. Her prior warnings included abandoning her patients for nearly two hours, failing to assess a patient during a shift, being "rude" to the Patient Care Coordinator, and calling her manager "names." Gunter was finally discharged for failing to report to work for a scheduled shift on July 24, 2004, and failing to respond appropriately when contacted by MVRMC while on-call on July 29, 2004.

Following Gunter's discharge she applied for unemployment benefits, which the Department of Commerce and Labor denied. Gunter appealed, and a telephonic hearing was held before an appeals examiner. The Appeals Examiner reversed the denial, and MVRMC appealed to the Commission. The Commission reversed the Appeals Examiner (once again denying Gunter benefits) and issued a written decision. Gunter appeals from that decision.

## II. ANALYSIS

### A. Was the Commission's determination that Gunter was discharged for employment-related misconduct supported by substantial and competent evidence?

Here, the parties dispute whether MVRMC's two reasons for discharging Gunter amounted to "misconduct" in connection with her employment such that she can be denied unemployment benefits. When an employer discharges an employee, the worker is not eligible for unemployment benefits if unemployment is "due to the fact that [she] left [her] employment voluntarily without good cause connected with [her] employment, or that [she] was discharged for misconduct in connection with [her] employment." I.C. § 72–1366(5). Misconduct is defined as a willful, intentional disregard of the employer's interests; a deliberate violation of the employer's rules; or a disregard of the standards of behavior which the employer has a right to expect of its employees. *Johns v. S.H. Kress & Co.*, 78 Idaho 544, 548, 307 P.2d 217, 219 (1957).

Under the "standards of behavior" test, MVRMC must prove by a preponderance of the evidence that (1) Gunter's conduct fell below the standard of behavior expected by MVRMC; and (2) that MVRMC's expectations were objectively reasonable in this particular case. *See Harris v. Elec. Wholesale*, 141 Idaho 1, 4, 105 P.3d 267, 270 (2004). However, there is "no requirement that the employee's disregard of the employer's expected standard of behavior must have been subjectively willful, intentional or deliberate." *Id.* at 3, 105 P.3d at 269. Whether an employee's behavior constitutes miscon-

duct is a factual determination that will be upheld unless not supported by substantial and competent evidence. *Id.* Thus if the Commission's findings of fact are supported by substantial and competent evidence, they will not be disturbed on appeal. I.C. § 72–732; *Welch v. Cowles Publ'g Co.*, 127 Idaho 361, 363, 900 P.2d 1372, 1374 (1995). Since Gunter argues that neither of the incidents underlying her termination were employment related misconduct, we will examine each separately.

### 1. *July 24 incident*

The first incident of misconduct for which Gunter was terminated revolves around her failure to report for work on July 24. The Commission found that at some point between when Gunter first printed her July, 2004, schedule in June and again printed it on July 18, 2004, the schedule for July had been changed. Gunter discovered this change when she reported for work on July 18, 2004, as her schedule showed and the charge nurse told her that she was not scheduled for that day. Gunter then reviewed her schedule and noticed other changes. Gunter printed another schedule (the updated schedule) and then asked to meet with her supervisor to discuss the changes. In its conclusions of law, the Commission notes that the updated schedule indicated that Gunter was scheduled to work on July 24, 2004. The Commission also found that Gunter did not attempt to explain her absence on July 24, 2004, and that she knew her job was already in jeopardy because she had already incurred a "Final Warning." The Commission concluded that Gunter's failure to report for her scheduled shift on July 24 fell below the standard of conduct her employer reasonably expected.

Gunter never argues that failing to report for work once the schedule was communicated to her would not constitute misconduct. Gunter acknowledges that it was her responsibility to know when she was scheduled, but asserts she was unaware she was scheduled to work on July 24 because MVRMC never communicated this to her. Therefore, she contends, it was unreasonable for the hospital to expect her to report for that shift. The Commission's determination of the facts, Gunter continues, is unsupported by the record and should be reversed. Although Gunter disagrees with the Commission's findings of fact regarding her conversations with her supervisor, her underlying argument is that she was not scheduled to work on July 24, 2004. Gunter insists that her updated schedule did not indicate to her that she was scheduled to work on July 24, 2004. Gunter asserts she was trained to read the schedule notation *"7–8 "* to mean she had to work on the days in which that notation appears. Therefore, she continues, because the updated schedule did not contain a *"7–8 "* on July, 24, 2004, she could not be expected to know that she had to work, and it was unreasonable for MVRMC to expect her to report for work that morning. Moreover, Gunter continues, MVRMC never refuted her testimony that she didn't understand how to read the schedule, so there is not substantial and competent evidence to support the Commission's decision.

■ However, the record contains sufficient evidence for the Commission's finding that Gunter was scheduled to work on July 24, 2004, and the conclusion that her failure to report for that scheduled shift constitutes employment-related misconduct. On the updated schedule July 24 appears on the far right, but the far right hand margin of the calendar was cut off. The updated schedule, however, does contain the notation "0700–1530" on July 24, 2004. Our review of both the updated schedule and the original schedule reveals that on each day in which *"7–8 "* appears, one of two other notations—"0700–1500" or "0700–1530"—also appears immediately proceeding *"7–8 "*. Not once does the notation *"7–8 "* appear alone, nor do the notations "0700–1530" or "0700–1500" appear alone; they always appear together, with the "0700–1500" or "0700–1530" notation appearing to the immediate left of the *"7–8 "* notation.[1] The existence of "0700–1530" coupled

---

1. Other notations also appear to the right of "0700–1500" or "0700–1530," but those nota- tions are not at issue.

with the cut-off margin on the updated schedule should have put Gunter on inquiry notice that she may have been scheduled to work on July 24, 2004 from 7:00 a.m. to 3:30 p.m. Additionally, Blanche Deuel, the Patient Care Coordinator for MVRMC, testified that if any notation appeared on a date the employee may be scheduled to work and that since "0700–1530" appears on the updated calendar, Gunter should have known that she was scheduled to work those hours on July 24.

The Commission could conclude from Gunter and Deuel's testimony and from examining the schedule that Gunter was scheduled to work on July 24, 2004, and that it was reasonable for MVRMC to expect her to report for that shift. Therefore, the Commission's decision that Gunter's failure to report for her scheduled shift on that date is employment related misconduct is supported by substantial and competent evidence.

### 2. *July 29 incident*

The second incident of misconduct for which Gunter was terminated revolves around her failure to appropriately respond while on-call on July 29, 2004. The Commission found that Gunter was placed on "on-call" status before her scheduled shift at MVRMC began that morning. Later, wishing to run errands, Gunter called MVRMC and left her husband's cell phone number as a contact number. While running errands, the cell phone rang, but the call did not complete and the phone did not register the number of the attempted caller. Gunter did not attempt to call MVRMC to ascertain if they placed the call, nor did she check her messages on her home phone to determine if MVRMC attempted to reach her at that number. However, MVRMC did attempt to contact Gunter a total of seven times (four times by cell phone and three times by home phone) to inform her that she was being taken off "on-call" status. Although Deuel left messages each time she attempted to reach Gunter on the cell phone until she successfully contacted Gunter, those messages did not register on the phone until later that afternoon after Gunter had spoken with Deuel. The Commission concluded that

this fell below the standard of conduct MVRMC expected and was employment related misconduct.

Gunter makes three separate arguments in relation to this incident. First, she argues that it was objectively unreasonable for MVRMC to not have instituted a cell phone policy and yet expect Gunter to abide by a "non-existent cell phone policy." Second, Gunter argues that not returning Deuel's call due to a cell phone malfunction did not fall below the acceptable standard of behavior because other nurses have been unreachable by cell phone but have not been disciplined. Finally, Gunter argues that she never violated MVRMC's on-call policy because Deuel did not call Gunter to have her return to the hospital but instead called to take Gunter off on-call status, so she no longer owed her employer a duty. MVRMC argues that Gunter is merely offering excuses that do not demonstrate the Commission reached its decision in error.

■ We turn first to Gunter's argument that it was objectively unreasonable for MVRMC to expect her to abide by a "non-existent cell phone policy." The Commission found that the hospital had in place two policies governing employee conduct and availability while "on-call." The Commission also found that employees are compensated for all hours they are "on-call." The Commission then determined that under MVRMC's policies, Gunter failed to fulfill her duty to provide it with a number where she could be reliably reached and concluded that this fell below the standard of conduct the employer reasonably expected.

■ Under the "standards of behavior" test, the employer must communicate duties and expectations that do not flow naturally from the employment relationship. *Pimley v. Best Values, Inc.*, 132 Idaho 432, 435, 974 P.2d 78, 81 (1999). Here, MVRMC had two written policies regarding "on-call" status. First, MVRMC's attendance policy defines a "No Call/No Show Occurrence" as:

> Absence with no notice prior to the scheduled shift; *unavailability or lack of response to pages and other efforts to contact within 10 minutes when on-call;* refusal to

work when on-call; failure to appear for work within one hour after the beginning of a shift. [Emphasis added].

Second, MVRMC's compensation policy provides that employees "who are placed on-call must return to the medical center, if called, within thirty (30) minutes. . . ." It also requires employees who are on-call "to keep the Patient Care Coordinator informed of a telephone number and/or beeper number where they can be reached at all times. . . ."

Gunter strenuously asserts these policies do not address MVRMC's expectations regarding cell phone use. However, it is difficult to see how the policy requiring an employee to keep MVRMC informed of a *telephone* number where they can be reached at all times does not cover cellular *telephone* numbers. Gunter seems to believe that this general policy does not cover a specific situation of cell phone use. However, the converse is true; MVRMC's general policy does cover cell phone usage because it specifically requires employees to provide a telephone number where they can be reached at all times while on-call. It does not specify which type of telephone number the employee must provide, so it leaves open the possibility that the employee can provide a cell phone number while still creating the expectation that the number will be reachable while the employee is on-call.

We move next to Gunter's argument that there is no evidence in the record that other employees who are not reachable by cell phone are subject to termination. That argument, however, misidentifies the issue and ignores the reason for her termination. Gunter was not fired because she was not reachable by *cell* phone; she was terminated because while on-call she failed to respond appropriately (at all), as defined by MVRMC's policies. Gunter wishes this Court to focus on the specifics of her situation and disregard MVRMC's general policies covering a broad range of situations. MVRMC had in place both an attendance policy and a compensation policy which provided the parameters of acceptable and ex-

pected behavior for employees. Gunter does not argue that she would not be subject to termination if she failed to respond appropriately and had only provided Deuel with her home phone number, or that other employees who fail to respond appropriately while on-call are not subject to disciplinary action.[2] MVRMC's policy that it expected employees to be reachable while on-call was communicated to on-call employees, and its expectation that Gunter would be available at the number she provided Deuel was reasonable.

Finally, we turn to Gunter's third argument, that she never violated MVRMC's policy because Deuel did not call Gunter to have her return to the hospital but instead called to take Gunter off on-call status. Even if Gunter was not required to return to the hospital and did not, therefore, violate MVRMC's compensation policy, she still violated MVRMC's attendance policy by failing to respond within ten minutes to Deuel's attempts to contact her. Additionally, Deuel testified that having employees return calls when being removed from on-call status was standard practice in order to correctly compensate employees under MVRMC's compensation schedule. There is substantial and competent evidence supporting the Commission's decision that Gunter's conduct fell below the standard of conduct MVRMC reasonably expected under its policies.

Therefore, since there was substantial and competent evidence that MVRMC communicated to Gunter her scheduled shift on July 24, 2004, since MVRMC communicated its expectations for employee behavior while "on-call" to Gunter through written policies and since there is substantial and competent evidence supporting the Commission's decision that Gunter's misconduct in violating those policies was employment-related misconduct, this Court affirms the Commission's decision.

## B. Is MVRMC entitled to attorney fees?

■ MVRMC requests attorney's fees pursuant to I.C. § 12–117. Idaho Code § 12–117 provides that in administrative or civil judicial proceedings against a state agency, a county, or a city the court may

---

**2.** Additionally, Deuel testified that each time an employee did not respond appropriately while on

call she notified that employee's department manager or director.

award reasonable attorney fees to the prevailing party if the opposing party acted without a reasonable basis in fact or law. I.C. § 12–117; *Kootenai Med. Ctr. v. Bonner County Commrs.*, 141 Idaho 7, 10–11, 105 P.3d 667, 670–71 (2004). Here, we find that Gunter did not pursue her appeal unreasonably and decline to award attorney's fees.

### III. CONCLUSION

This Court affirms the decision of the Commission because its findings were supported by substantial and competent evidence. The testimony and updated schedule provided evidence from which the Commission could conclude that Gunter should have known she was scheduled to work on July 24, 2004 and reported for that shift. Moreover, MVRMC provided written policies which governed employees' conduct while on-call and the Commission's determination that Gunter's failure to respond appropriately while on call is supported by substantial and competent evidence. Costs to the Respondent.

Chief Justice SCHROEDER and Justices TROUT, EISMANN and JONES concur.