## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 43169

|  |  |  |
|---|---|---|
| IN THE MATTER OF THE VERIFIED PETITION FOR WRIT OF MANDAMUS. | ) ) ) | Boise, August 2015 |
| ------------------------------------------------------------ | ) | |
| COEUR D'ALENE TRIBE, | ) ) | 2015 Opinion No. 106 |
| Petitioner, | ) ) | Filed: November 20, 2015 |
| v. | ) ) ) | Stephen W. Kenyon, Clerk |
| LAWERENCE DENNEY, Secretary of State of the State of Idaho, in his official capacity, | ) ) ) ) | SUBSTITUTE OPINION: THE PREVIOUS OPINION ISSUED SEPTEMBER 10, 2015 IS HEREBY WITHDRAWN. |
| Respondent. | ) ) | |

Petition for Writ of Mandamus.

The Tribe's petition for a writ of mandamus is <u>granted</u>.

Ferguson Durham, PLLC, Boise, for petitioner. Deborah A. Ferguson argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. Brian Kane argued.

David H. Leroy, Boise, argued for amicus curiae Coeur d'Alene Racing, Ltd.

Greener Burke, Shoemaker Oberrecht, P.A., Boise, for amicus curiae Intermountain Racing and Entertainment, LLC.

David F. Hensley and Cally A. Younger, Boise, for amicus curiae Honorable C.L. "Butch" Otter, Governor of Idaho.

Barker Rosholt & Simpson, LLP, Boise, for amicus curiae Treasure Valley Racing, LLC.

---

BURDICK, Justice

This case comes before this Court pursuant to a Writ of Mandamus. The Coeur d'Alene Tribe (Tribe) petitioned the Court for a Writ of Mandamus compelling the Secretary of State to

1

certify Senate Bill 1011 (S.B. 1011) as law. The Tribe alleges that the Governor did not return his veto for S.B. 1011 within the five-day deadline under the Idaho Constitution. The Tribe argues that because the veto was untimely, the bill automatically became law and the Secretary of State had a non-discretionary duty to certify it as law. We agree.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On March 30, 2015, both the Senate and the House of Representatives passed S.B. 1011 with supermajorities. S.B. 1011 had one purpose: to repeal Idaho Code section 54-2512A, a law which allowed wagering on "historical" horse races. In the afternoon of March 30, 2015, the bill was presented to the Governor, who then had five days to veto the bill pursuant to the Idaho Constitution.

On April 2, 2015, the legislature adjourned temporarily for the Easter weekend. Around that time, the media reported that the Governor intended to wait until Monday, April 6, to announce his decision on whether to sign S.B. 1011 into law.

The Senate reconvened Monday, April 6, 2015. That morning, the Governor returned S.B. 1011 and a veto message[1] to the Senate President Pro Tempore's office, along with a letter addressed to the President of the Senate. The President Pro Tempore and two other Senate officials filed official letters in the Senate Journal regarding S.B. 1011. The President Pro Tempore's letter notified the Senate that the Governor returned the veto to the President Pro Tempore's office at 8:52 a.m. on April 6, 2015, which was past the constitutional deadline. The letter further stated that "such deadline having passed, the provisions of Article IV, § 10 of the Idaho Constitution and Idaho Code § 67-504 and 505 appear to apply."

The Secretary of the Senate also filed a letter indicating that the Governor failed to return S.B. 1011 to the Secretary of the Senate's Office by the April 4 deadline. That letter also indicated that the Governor's office returned other communications to the Secretary of the Senate's Office over the weekend, but nothing relating to S.B. 1011.

Finally, Michelle Stennett, the Senate Minority Leader, filed a letter with the Secretary of the Senate, which also advised the Senate that the Governor's veto of S.B. 1011 was untimely and invalid. Stennett's letter stated that "[t]o the best of my knowledge no earlier return was

---

[1] The veto message was dated April 3, 2015, but there is nothing in the record to indicate that it was returned to the Senate President or any other Senate official at any time before April 6, 2015.

attempted or effectuated to the Senate, nor was anyone asked to receive such a return at an earlier time."

Despite these notifications, the President of the Senate proceeded to call a vote during the April 6 session to override the veto. A majority, but less than two-thirds of the Senate, voted to override the veto. Consequently, the President of the Senate sustained the Governor's veto and declared that S.B. 1011 failed to become law.

The Tribe, believing that S.B. 1011 automatically became law when the Governor failed to return the veto within five days, subsequently requested the Secretary of State to certify it as law. The Secretary of State refused, asserting that he lacked the authority to certify the bill as a law because "the requisite gubernatorial authentication under Idaho Code § 67-505 [was] absent." The Tribe then petitioned this Court for a Writ of Mandamus ordering the Secretary of State to certify S.B. 1011, deposit it with the laws of the State, and assign it a chapter number in the Idaho Code. The Governor, Treasure Valley Racing, LLC, Intermountain Racing and Entertainment, LLC, and Coeur d'Alene Racing, Ltd. all filed amicus briefs with this Court opposing the petition for a writ of mandamus.

## II.    STANDARD OF REVIEW

Article V, section 9 of the Idaho Constitution and Idaho Code section 1-203 confer original jurisdiction on this Court to issue writs of mandamus. Pursuant to Idaho Code section 7-302, a writ of mandamus "may be issued by the Supreme Court . . . to any . . . person, to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station." This Court has repeatedly held that mandamus is not a writ of right and the allowance or refusal to issue a writ of mandate is discretionary. *Hunke v. Foote*, 84 Idaho 391, 398, 373 P.2d 322, 325 (1962); *Kerley v. Wetherell*, 61 Idaho 31, 48, 96 P.2d 503, 511 (1939); *Reynard v. City of Caldwell*, 53 Idaho 62, 81, 21 P.2d 527, 534 (1933); *Logan v. Carter*, 49 Idaho 393, 403, 288 P. 424, 427 (1930); *State v. Malcom*, 39 Idaho 185, 190, 226 P. 1083, 1085 (1924); *State v. Banks*, 37 Idaho 27, 34, 215 P. 468, 470 (1923).

In *Utah Power & Light Co. v. Campbell*, 108 Idaho 950, 953, 703 P.2d 714, 717 (1985), this Court stated that "[m]andamus will lie if the officer against whom the writ is brought has a 'clear legal duty' to perform the desired act, and if the act sought to be compelled is ministerial or executive in nature." If the act sought to be compelled of the public officer is ministerial, the Court must find the party seeking the writ has a clear legal right to have the act performed. *Kolp*

3

*v. Bd. of Tr. of Butte Cnty. Joint Sch. Dist. No. 111*, 102 Idaho 320, 323, 629 P.2d 1153, 1156 (1981). Furthermore, Idaho law requires that a writ must be issued in those cases where there is not a plain, speedy, and adequate remedy in the ordinary course of law. I.C. § 7-303.

## III.   ANALYSIS

The Tribe seeks a writ of mandamus from this Court compelling the Secretary of State to certify S.B. 1011 as law. There are several discrete issues involved here. First, we must address the amici's arguments that the Tribe does not have standing in this matter. Second, we must determine whether the Governor's veto was valid. Third, if the Governor's veto was invalid, we must then determine whether the Secretary of State has a non-discretionary duty to certify S.B. 1011 as law. Fourth, we must determine whether a writ of mandamus is an appropriate remedy in this case. Finally, the Tribe requests attorney fees on this writ of mandamus. We will address each issue in turn below.

### A.  This Court will decide this matter.

"Concepts of justiciability, including standing, identify appropriate or suitable occasions for adjudication by a court." *State v. Philip Morris, Inc.*, No. 41679, 2015 WL 4757859, at *7 (Idaho July 23, 2015). Standing focuses directly on whether a particular interest or injury is adequate to invoke the protection of judicial decision. *Id.* When determining whether a party has standing, this Court has looked to United States Supreme Court decisions for guidance. *Koch v. Canyon Cnty.*, 145 Idaho 158, 161, 177 P.3d 372, 375 (2008). In fact, the origin of Idaho's standing is a self-imposed constraint adopted from federal practice, as there is no "case or controversy" clause or an analogous provision in the Idaho Constitution as there is in the United States Constitution. *See* U.S. Const. art. III. § 2, cl. 1. Consequently, in a recent decision from this Court, we set forth the test for standing pursuant to United States Supreme Court jurisprudence:

> [T]o establish standing a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a like [lihood] that the injury will be redressed by a favorable decision. An injury sufficient to satisfy the requirement of an injury in fact must be concrete and particularized and actual or imminent, not conjectural or hypothetical.

*Philip Morris, Inc.*, 2015 WL 4757859, at *7 (citations omitted)(internal quotation marks omitted).

In that opinion, we also clarified that the "allege or demonstrate" standard so often repeated in our opinions is an incomplete statement of requirements for standing. *Id.* We

4

explained that consistent with the federal standard, standing "requires a showing of a 'distinct palpable injury' and 'fairly traceable causal connection between the claimed injury and the challenged conduct.' " *Id.* (quoting *Young v. City of Ketchum*, 137 Idaho 102, 104, 44 P.3d 1157, 1159 (2002)). This Court has defined palpable injury as "an injury that is easily perceptible, manifest, or readily visible." *Id.* at \*8. Moreover, the injury cannot be one suffered alike by all citizens in the jurisdiction. *Troutner v. Kempthorne*, 142 Idaho 389, 391, 128 P.3d 926, 928 (2006).

The Tribe alleges standing in this proceeding on the basis that, as a lead proponent of S.B. 1011, it has a concrete and discrete interest in this case and contends that it has been injured by the Secretary of State's refusal to certify the bill as law. The Tribe claims that it is particularly harmed due to its distinct rights under the Indian Gaming Regulatory Act ("IGRA"). *See* 25 U.S.C. § 2701, et seq. Although the Tribe has established a unique and protected right towards gaming in the state, it fails to present sufficient facts as to how S.B. 1011 impacts the Tribe's ability to benefit from gaming going forward. The Tribe correctly concedes that this Court "has never held that increased competition alone is sufficient to confer standing." *Martin v. Camas Cnty. ex rel. Bd. Comm'rs*, 150 Idaho 508, 514, 248 P.3d 1243, 1249 (2011). Without providing facts to show actual or imminent losses of profit or rights greater than the average citizen, the Tribe has not demonstrated a "distinct and palpable" injury sufficient to confer standing. *Troutner*, 142 Idaho at 391, 128 P.3d at 928. However, we may nonetheless exercise jurisdiction over this writ.

This Court has original jurisdiction "to issue writs of mandamus, certiorari, prohibition, and habeas corpus, and all writs necessary or proper to the complete exercise of its appellate jurisdiction." Idaho Const. art. V, § 9. We have recognized that this Court may "exercise jurisdiction to review a petition for extraordinary relief where the petition alleges sufficient facts concerning a possible constitutional violation of an urgent nature." *Idaho Watersheds Project v. State Bd. of Land Comm'rs*, 133 Idaho 55, 57, 982 P.2d 358, 360 (1999) (granting a writ of prohibition for a House Joint Resolution that proposed to amend the Idaho Constitution); *Keenan v. Price*, 68 Idaho 423, 429, 195 P.2d. 662, 664 (1948) (accepting jurisdiction because of the "importance of the question presented" and the "urgent necessity for immediate determination"). Under such circumstances, we have held that it is not necessary that a citizen show a special injury to himself or his property to entitle him to proceed by mandamus to compel public officers

5

to perform non-discretionary ministerial duties. *See Beem v. Davis*, 31 Idaho 730, 733, 175 P. 959, 960 (1918).

*Beem* is consistent with this Court's willingness to relax ordinary standing requirements in other cases where: (1) the matter concerns a significant and distinct constitutional violation, and (2) no party could otherwise have standing to bring a claim. *See Koch*, 145 Idaho at 162, 177 P.3d at 376; *see also State ex rel. Miller v. State Bd. of Educ.*, 56 Idaho 210, 217, 52 P.2d 141, 143 (1935). For instance, in *Koch*, this Court held that Canyon County taxpayers had standing to litigate whether Canyon County had incurred indebtedness or liability in violation of article VIII, section 3, of the Idaho Constitution. 145 Idaho at 162, 177 P.3d at 376. The Court recognized that if it held otherwise, it would essentially "be deleting that provision from the Constitution" because no party would have standing to enforce it. *Id.*

If the Tribe is correct in its allegations, this case concerns a significant and distinct constitutional violation. This Court has recognized:

> The people of this state have reserved to themselves the constitutional right to have all of their laws made in a certain mode, and have withheld from the legislature the power to make laws in any other mode. Shall the legislature and the judiciary connive together to overthrow this constitutional right? Do the obligations of the official oath rest so lightly upon judicial officers that they may obey those obligations or not, support the constitution or not, as they may deem expedient or inexpedient? May they enforce the fundamental law or refuse to do so at pleasure? If so, then constitutional government is in the last stages of dissolution, and the people have no constitutional rights which must necessarily be respected.

*Cohn v. Kingsley*, 5 Idaho 416, 445, 49 P. 985, 995 (1897). Consequently, this Court has insisted upon strict adherence to the procedures outlined in our Constitution for enacting laws and in exercising the veto power. *See Cohn*, 5 Idaho at 421–22, 49 P. at 986; *Cenarrusa v. Andrus*, 99 Idaho 404, 406–10, 582 P.2d 1082, 1084–88 (1978). Indeed, we have stated that the provisions are mandatory and that it is the imperative duty of the legislature, and in this case, the executive as well, to obey them. *Cohn*, 5 Idaho at 421–22, 49 P. at 986. The duty of supporting the Constitution of the state "is imposed upon all public officers by the solemn obligations of the official oath, which obligations cannot be discharged by disobeying, ignoring, and setting at naught the plain provisions of the constitution, but only by obedience thereto." *Id.* Where the mandatory provisions of the constitution require certain things to be done in exercising the veto

power and enacting laws, this Court must guard against violations of those constitutional provisions.

The public has a significant interest in the integrity of Idaho's democratic government, and a writ of mandamus is a remedy by which public officials may be held accountable to the citizens for their constitutional duties. If the Tribe does not have standing to bring this writ, the question would then become, who does? Neither the members of the Senate, the Governor, nor the Secretary of State appear ready or willing to challenge the constitutionality of the Governor's purported veto or of the Senate's actions in this case. Thus, if the Tribe could not bring this writ, there would be no one to enforce the important constitutional provisions involved in this case or to ensure that the integrity of the law-making process is upheld. The legal question before the court involves a fundamental constitutional provision regarding governmental structure and is a matter over which this Court has original jurisdiction pursuant to article V, section 9 of the Idaho Constitution. Such an interest is sufficient to compel an elected official to comply with a non-discretionary constitutional duty through a writ of mandamus, and this Court may therefore entertain the Tribe's plea.

**B. The Governor's veto was invalid and S.B. 1011 automatically became law.**

The Tribe asserts that the Governor's attempted veto of S.B. 1011 was untimely. Consequently, the Tribe argues that S.B. 1011 became law the moment the deadline for the veto passed. Based on the plain language of the relevant constitutional and statutory provisions, together with the undisputed and unambiguous facts in the Senate Journal, we agree.

**1. Relevant constitutional and statutory provisions.**

Idaho Constitution, article IV, section 10 addresses the Governor's veto power. It provides:

> Every bill passed by the legislature shall, before it becomes a law, be presented to the governor. If he approve, he shall sign it, and thereupon it shall become a law; but if he do not approve, he shall return it with his objections to the house in which it originated, which house shall enter the objections at large upon its journals and proceed to reconsider the bill. If then two-thirds of the members present agree to pass the same, it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered; and if approved by two-thirds of the members present in that house, it shall become a law, notwithstanding the objections of the governor. In all such cases the vote of each house shall be determined by yeas and nays, to be entered on the journal. *Any bill which shall not be returned by the governor to the legislature within five days (Sundays excepted) after it shall have been presented to him, shall become a law*

7

*in like manner as if he had signed it,* unless the legislature shall, by adjournment, prevent its return, in which case it shall be filed, with his objections, in the office of the Secretary of State within ten days after such adjournment (Sundays excepted) or become a law.

Idaho Const. art. IV, § 10 (emphasis added).

The Idaho Code provides further guidance with respect to the timeframe for returning a bill during an adjournment and the consequences for the Governor's untimely return of a bill. Specifically, Idaho Code section 67-504 provides:

If, on the day the governor desires to return a bill without his approval and with his objections thereto to the house in which it originated, *that house has adjourned for the day (but not for the session), he may deliver the bill with his message to the presiding officer, clerk, or any member of such house, and such delivery is as effectual* as though returned in open session, *if the governor, on the first day the house is again in session, by message notifies it of such delivery, and of the time when, and the person to whom, such delivery was made.*

(emphasis added). Idaho Code section 67-505 then addresses the consequences should the Governor fail to return a bill within the deadline:

*Every bill* which has passed both houses of the legislature, and has *not* been *returned by the governor within five (5) days, thereby becoming a law, is authenticated by the governor causing the fact to be certified thereon by the secretary of state* in the following form:

'This bill having remained with the governor five (5) days (Sundays excepted), and the legislature being in session, it has become a law this .... day of ...., ....,' which certificate must be signed by the secretary of state and deposited with the laws in his office. Where the legislature by adjournment, prevents the return of a bill, the governor, if he disapproves thereof, shall file the same, with his objections, in the office of the secretary of state within ten (10) days after said adjournment (Sundays excepted) or the same shall become a law.

(emphasis added).

## 2. **Facts.**

This Court has recognized that it may only look to the Senate Journal for the relevant facts of official government acts regarding the passage of a bill into law. *Brassey v. Hanson*, 81 Idaho 403, 406, 342 P.2d 706, 707 (1959). Indeed, this Court has held:

'The principle of law is settled beyond controversy that a court will not go behind the journal of a legislature to ascertain what was done by that body. The journal itself is conclusive, and, if the journal is incorrect, or improperly made up, it is for the legislature itself to correct it, and not for the court.'

8

*Id.* at 407, 342 P.2d at 708 (quoting *Burkhart v. Reed*, 2 Idaho 503, 511, 22 P. 1, 4 (1889) *aff'd sub nom. Clough v. Curtis*, 134 U.S. 361 (1890)). Consequently, "this Court will take judicial notice of public and private acts of the legislature and the legislative journals to determine whether an act was constitutionally passed and for the purpose of ascertaining what was done by the legislature." *Worthen v. State*, 96 Idaho 175, 176, 525 P.2d 957, 958 (1974). The recitals of the Senate Journal of the Idaho Senate for the First Regular Session of the Sixty-Third Legislature are therefore conclusive and cannot be contradicted. We will review those recitals to determine whether the Governor's veto in this case was effective.

As a preliminary matter, the amici argue that this Court's review of the Senate Journal should be limited to the facts that the Constitution requires be included in the Senate Journal. Specifically, the amici assert that this Court should look only to the record of the proceedings and the yeas and nays, which is what Idaho Constitution article III, section 13 directs be included in the Journal. Thus, the amici argue that this Court's review of the Journal should be limited to the vote the Senate took on the veto and that the result of that vote is binding on this Court. To support this argument, the amici rely on *Whaley v. Independence Cnty.*, 205 S.W. 2d 861 (Ark. 1947). However, *Whaley* is inapposite here because that case dealt with conflicting facts in official records from two different branches of government. Here, however, there are no conflicting facts in the Senate Journal or in any other official record from the legislative or executive branches of our government. Rather, the facts in the Senate Journal are clear, unambiguous, and uncontroverted.

Furthermore, there is no case law in Idaho to suggest that this Court's review of facts from Senate Journals has been limited to the facts the Idaho Constitution requires to be included in them. This Court has expressly declined to limit its review of legislative journals to those facts required by the Constitution. *Cohn*, 5 Idaho at 446, 49 P. at 996. In *Cohn*, this Court reasoned that limiting the journal to the facts the Constitution expressly requires to be entered in it "would dispense entirely with the office of the journal" and that "[t]he idea is not in accord with the spirit, and is opposed to the letter, of our constitution." *Id.* Instead, this Court explained that under the Constitution, each house is required to keep a journal of its proceedings, which means that "the journal shall show all of the proceedings of the house, and all the steps taken in the passage of every bill." *Id.* at 426, 49 P. at 988. This Court went on to state:

> By reason of this provision the journal becomes, not only the best evidence, but the exclusive evidence, of what was done by the house keeping such journal, and courts must impute to the record and statements absolute verity. The recitals in the journal are conclusive, and cannot be contradicted. In the passage of a bill by either house, the journal of such house must show affirmatively that all of the requirements of the constitution were complied with by such house.
>
> . . . .
>
> The object of the journals, principally, is to enable the people to ascertain that any and all laws were enacted in the manner required by the constitution, so as to determine whether such was constitutionally passed, and therefore valid and binding. If we refuse to go back of the enrolled bill,—close our eyes and ears to the evidence which the legislature furnishes, and is required by the constitution to furnish,—the object of these constitutional provisions may be wholly defeated.

*Id.* at 430, 447, 49 P. at 988, 996 (citations omitted).

Consequently, our case law has indicated, without distinguishing between facts that are constitutionally required and those that are not, that "it is the imperative duty of the court, when the issue is before it, to look to the journals of the legislature, and see if, in passing the statute in question, [the] legislature [] proceeded in the manner provided by the Constitution." *Id.* at 421, 49 P. at 986. Moreover, where the facts contained in a legislative journal are clear, unambiguous, and uncontroverted, as they are here, we see no reason why we should be constrained to consider only those facts the Constitution requires, particularly where there has been a potential constitutional violation. Thus, this Court will focus on the entirety of the Senate Journal and consider all of the uncontroverted facts contained therein to ascertain what was done by the legislature and determine whether the Governor's veto withstands this constitutional challenge. *See Worthen*, 96 Idaho at 176, 525 P.2d at 958. Accordingly, the relevant facts are set forth below.

The Judiciary and Rules Committee reported that S.B. 1011 was delivered to the Office of the Governor at 4:54 p.m. on Monday, March 30, 2015. On Thursday, April 2, the legislature adjourned for the Easter weekend, with official business to resume Monday, April 6 at 1:30 p.m.

The Senate Journal then reflects that the Governor returned S.B. 1011 with his veto message to the Senate on Monday morning, April 6. This is reflected by three letters—all of which were addressed to the Senate President—that were entered in the Senate Journal Monday

afternoon once the Senate had reconvened.[2] The first letter was from the President Pro Tempore, and it stated:

> This communication reflects that Senate Bill 1011 was returned to my office at 8:52 am on April 6, 2015. To the best of my knowledge no earlier return was attempted to my office, nor was I asked to receive such a return at any earlier time. The return of S 1011 being due at 4:54 pm on April 4, 2015 and such deadline having passed, the provisions of Article IV, § 10 of the Idaho Constitution and Idaho Code § 67-504 and 505 appear to apply.

The second letter, from the Secretary of the Senate, stated:

> This communication reflects that S 1011 was not returned to my office by 4:54 p.m. on April 4, 2015 in my capacity as the Secretary of the Senate. Other correspondence of legislation were slipped under my door and returned in accordance with Article IV, § 10 and Idaho Code §§ 67-504 & 505. Correspondence of legislation is routinely returned to me in this fashion. To the best of my knowledge no earlier return was attempted to my office, nor was I asked to receive such a return at any earlier time.

Finally, the Senate Minority Leader submitted a letter, which stated:

> This communication reflects that Senate Bill 1011 was returned to the Senate Pro Tem's office at 8:52 am on April 6, 2015. To the best of my knowledge no earlier return was attempted or effectuated to the Senate, nor was anyone asked to receive such a return at any earlier time. The return of S1011, being due at 4:54 pm on April 4, 2015, and such deadline having passed, S1011 is law pursuant to the provisions of Article IV, Section 10 of the Idaho Constitution and Idaho Code Sections 67-504 and 67-505.

There were also messages[3] from the Governor read into the Senate Journal on April 6, 2015, one of which was a letter dated April 3, 2015, and addressed to the Senate President. That letter stated, in relevant part: "I hereby advise you that I have returned without my approval, disapproved and vetoed, the following Senate Bill, to wit: S 1011 within the time limited by law, the same having arrived in the Office of the Governor at the hour of 4:54 p.m. on March 30,

---

[2] The letters were never actually read aloud during that legislative session. The video recording of that session reveals that the Secretary of the Senate began to read each letter, but for each one, a member of the Senate interrupted the Secretary of the Senate only a few words in and asked for unanimous consent that further reading of the letters be "dispensed with" on the basis that the "correspondence has been provided to each of [the Senators]." Noting there were no objections, the President of the Senate ordered the reading of each of the letters be dispensed with. Notably, although the same member of the Senate asked unanimous consent to dispense with the reading of the Governor's letter as well, his request was not made until the Secretary of the Senate read the most crucial part of the Governor's letter. Specifically, the Secretary of the Senate read the introduction, which stated: "I hereby advise you that I have returned without my approval, disapproved and vetoed, the following Senate Bill, to wit: S 1011 within the time limited by law . . . ." Consequently, based on the video footage alone, it would appear as though there were no deficiencies with the Governor's veto of S.B. 1011 and that the bill failed to become law.

[3] All but one of these messages concerned bills not relevant to this proceeding.

11

2015." Although the Governor's letter states that he returned the veto within the time limited by law, there is nothing in the letter to indicate the exact date or time when the veto was returned.

After the Governor's letter was read into the Senate Journal, the Senate took a vote on whether S.B. 1011 should become law notwithstanding the Governor's veto. A subsequent roll call resulted in 19 yeas and 16 nays. Because less than two-thirds of the Senate voted in the affirmative, the Senate President declared that the Governor's veto was sustained and that S.B. 1011 failed to become law. With the foregoing facts and law in mind, the next step is to determine whether the Governor's veto was valid.

### 3. Analysis.

As mentioned above, the Tribe argues that the facts contained in the Senate Journal are uncontroverted and establish that S.B. 1011 is law. The Tribe contends that S.B. 1011 automatically became law when the Governor failed to return his veto within the five-day deadline and, consequently, the Senate's subsequent vote on the veto was a nullity and had no effect on the bill becoming law. Conversely, the amici argue that the Senate Journal conclusively establishes that S.B. 1011 did not become law because the Senate took a vote on the Governor's veto and none of the Senators objected to treating the veto as timely.

This Court has recognized that "where a statute or constitutional provision is plain, clear, and unambiguous, it 'speaks for itself and must be given the interpretation the language clearly implies.' " *Verska v. St. Alphonsus Reg'l. Med. Ctr.*, 151 Idaho 889, 895, 265 P.3d 502, 508 (2011) (quoting *Moon v. Inv. Bd.*, 97 Idaho 595, 596, 548 P.2d 861, 862 (1976)). This Court reviews the provision's language as a whole, considering the meaning of each word, so as not to render any word superfluous or redundant. *BHC Intermountain Hosp., Inc. v. Ada Cnty.*, 150 Idaho 93, 95, 244 P.3d 237, 239 (2010). Thus, the starting point in this Court's interpretation of the relevant constitutional and statutory provisions is the plain language.

The plain language of Idaho Constitution, article IV, section 10, requires the Governor to return his veto to the house in which the bill originated—in this case, the Senate—within five days of when the bill was presented to him. However, because the Senate had temporarily adjourned for the Easter weekend, Idaho Code section 67-504 offered an alternative method for the Governor to return the bill. Under Idaho Code section 67-504, the Governor *may* have alternatively delivered the vetoed bill with his message to "the presiding officer, clerk, or any member of such house" within the five-day period rather than returning it to the Office of the

12

Senate. I.C. § 67-504. However, that section also provides that such delivery is effective as though the bill was returned in open session, "*if* the governor, on the first day the house is again in session, by message notifies it of such delivery, and of the time when, and the person to whom, such delivery was made." I.C. § 67-504 (emphasis added). Thus, in this case, the Governor had two options:

1. Return the veto with his message to the Office of the Senate within five days after S.B. 1011 was presented to him; OR

2. Return the veto with his message by delivering it to the presiding officer, clerk, or any member of the Senate within five days after S.B. 1011 was presented to him, *and* send a message to the Senate the first day it reconvened after the Easter weekend notifying it of the time and person he delivered the veto to.

Under either option, the Governor was required to "return" his veto to an appropriate figure within the allotted five-day timeframe. The Constitution does not define the term "return," but Webster's American Dictionary of the English Language defines "return" as "to bring, carry, or send back; as, to *return* a borrowed book; to *return* a hired horse," and, more specifically, "[i]n law, the rendering back or delivery . . . to the proper officer or court . . . ." N. Webster, An American Dictionary of the English Language (1828). Furthermore, we have held that "the *act* of returning [the bill] with his objections is the veto of the bill." *Cenarrusa*, 99 Idaho at 409, 582 P.2d at 1087 (emphasis added). Therefore, we have previously indicated that returning a bill requires the overt act of physically delivering the bill to the appropriate official.

This interpretation is supported by the language in Idaho Code section 67-504, which states that the Governor may return a bill by "delivering" it to one of several officials listed under that provision when the house has temporarily adjourned. Delivery suggests relinquishing control over the bill by physically handing it over to one of the named officials. Indeed, Webster's Dictionary of the English Language defines "deliver" as "[t]o give, or transfer; to put into another[']s hand or power; to commit; to pass from one to another. . . . So we say, to *deliver* goods to a carrier; to *deliver* a letter; to *deliver* possession of an estate." N. Webster, An American Dictionary of the English Language (1828).

Thus, the plain meaning of "return," this Court's analysis in *Cenarrusa*, and our statutory provision dealing with the return of a bill during adjournment support the conclusion that the word "return" means that the bill must be placed into the actual physical possession of the

13

appropriate office or officer to effectuate the return. Consequently, we conclude that for purposes of Idaho Constitution, article IV, section 10, and Idaho Code section 67-504, "return" means relinquishing control and physically delivering the veto to an official to whom the Governor is authorized under those provisions to return the veto.

The unambiguous and uncontradicted facts in the Senate Journal indicate that the Governor's veto failed under both the Idaho Constitution and Idaho Code section 67-504. First, despite the Governor's veto message bearing the date of April 3, there is nothing in the Senate Journal to indicate that the vetoed bill was physically returned to the Office of the Senate on or before the April 4 deadline. Instead, the letters outlined above tell a different story. In fact, two of the letters specifically state that S.B. 1011 was returned to the President Pro Tempore's office at 8:52 A.M. on Monday, April 6, 2015. Further, as the Tribe noted in oral argument, the Governor only received one original copy of the bill, and that copy was returned to the President Pro Tempore's office on Monday, April 6, 2015. The Secretary of State and the amici do not point to any facts in the Senate Journal—other than the Governor's letter that was dated April 3, 2015—evidencing an earlier return. Thus, the uncontroverted facts conclusively establish that the Governor did not physically return the veto to the Office of the Senate within the five-day period as the Constitution requires.

The Governor's veto also fell short of satisfying Idaho Code section 67-504's requirements. Indeed, the Senate Journal does not reflect that the Governor returned the bill to any one of the listed officials at any time before April 6, 2015. Furthermore, the Senate Journal is devoid of a message notifying the Senate of the time and the person to whom the Governor returned the veto within the five-day deadline.[4] In sum, the Senate Journal is absent any

---

[4] Interestingly, a newspaper article from the Coeur d'Alene Press indicated that the President Pro Tem saw the veto on April 3, 2015, but never took possession of it. Specifically, the article stated:

> Idaho Senate President Pro Tem Brent Hill said he saw the controversial SB 1011 veto on April 3, but did not take possession of the bill. Sen. Hill, R-Rexburg, said the governor had called to inform him that he intended to veto the bill on April 3, but he wasn't going to release that information until April 6.… Hill said after the phone call, he went to the governor's office later that afternoon to make sure that the press wouldn't have access to the veto over the Easter weekend. "It was about 3:30 (p.m.) on Friday, and I went down to his office to determine if the veto was a public record or not," he said, adding he was assured by Gov. Butch Otter's chief of staff that the Senate would not read it in the papers over the weekend. "He pulled it out of a file in his office and showed me that it had been vetoed." But, Hill said, he didn't take possession of the document. "Actually, I didn't know the governor had to deliver that to the Senate at that time either," Hill said. "Neither one of us did."

14

indication that the bill was returned to an official listed in Idaho Code section 67-504 before the April 4 deadline, or of a message reflecting such timely delivery. Thus, the Governor's veto was not effective under Idaho Code section 67-504.

The Constitution is clear on the effect of a veto that is not returned within five days: "Any bill which shall not be returned by the governor to the legislature within five days (Sundays excepted) after it shall have been presented to him, *shall become a law* in like manner as if he had signed it . . . ." Idaho Const. art. IV, § 10. Thus, the Constitution makes clear that the moment the deadline has passed for the return of a bill, the bill automatically becomes law. The Secretary of State, however, contends that the Governor must authenticate the bill before it becomes law. This argument is unavailing. Nothing in the Constitution suggests that the Governor must take steps to authenticate a bill that was not returned to the legislature within five days after presentment. Indeed, while Idaho Constitution, article IV, section 10 requires the Governor to sign and return a bill that he approves, there is no such requirement where the Governor fails to return the bill to the legislature within the five-day deadline. Instead, the Constitution states that bills not returned by the Governor within the deadline become law *as if* the Governor had signed it. Thus, under the Constitution, there are two ways a bill may be authenticated: (1) through the Governor's signature; or (2) through a non-veto, in which case authentication is automatic.

Furthermore, an analysis of Idaho Code section 67-505's plain language also reveals that when the Governor fails to veto a bill within five days after presentment, no further action is required to authenticate the bill. Indeed, Idaho Code section 67-505 explicitly states that a bill that "has not been returned by the governor within five (5) days, thereby becoming a law, *is* authenticated by the governor causing the fact to be certified thereon by the secretary of state . . . ." (emphasis added). In contrast, Idaho Code section 67-503 provides that where the legislature, through reconsideration, passes a bill over the Governor's veto, the bill "must be authenticated as having become a law by a certificate indorsed thereon, or attached thereto" in a form specified by the statute. Thus, while authentication under Idaho Code section 67-503 requires further action by the Governor, no further action is required to authenticate a bill under Idaho Code section 67-505. In sum, both the Constitution and Idaho Code section 67-505 make

Jeff Selle, *Official Recalls Veto Details*, CDAPress.com (May 2, 2015), *available at* http://www.cdapress.com/news/political/article_5b891f7b-cabf-5e5e-b2b3-b1e5fe0d129c.html.

clear that the moment the deadline has passed for the return of a bill, the bill is automatically authenticated and becomes law with no further action required by the Governor or any other official.

Here, the uncontroverted facts in the Senate Journal indicate that the Governor did not return S.B. 1011 until Monday, April 6, 2015. Therefore, S.B. 1011 automatically became law with no further action required by the Governor. There is nothing in the Constitution granting the Governor, the Senate, or any other official the power to disregard the untimely return of S.B. 1011 or to change the fact that S.B. 1011 became law. Instead, this Court has recognized that constitutional provisions "are mandatory, and it is the imperative duty of the legislature to obey them," and that the duty of supporting the constitutional provisions "is imposed upon all public officers by the solemn obligations of the official oath, which obligations cannot be discharged by disobeying, ignoring, and setting at naught the plain provisions of the constitution, but only by obedience thereto." *Cohn*, 5 Idaho at 421, 49 P. at 985. Consequently, this Court has held that the requirements of the Constitution must be strictly adhered to and the Senate cannot cure defects through declarations, or in this case, a vote. *Id.* (stating that constitutional requirements regarding the manner of passing bills must be strictly adhered to and that "the mere declaration by the senate that 'we concur in the house amendments' does not answer the requirements of the constitution.").[5] "If either house can disregard one plain provision of the constitution, then it may disregard all of its provisions, and the constitution, instead of being the fundamental law of the land, is a mere sham, an idle mockery, a nullity." *Id.* at 427, 49 P. at 988. Thus, the Senate's actions did not change the fact that S.B. 1011 automatically became law when the Governor failed to return it within five days. Because the Governor's veto was ineffective and S.B. 1011 automatically became law, the next question becomes whether the Secretary of State is required to certify it as law.

---

[5] The Court in *Cohn* further stated:

> The constitution requires certain things to be done in connection with the passage of any and all laws. It is true that the doing of these things is a matter of procedure. But by what right shall anyone be permitted to say that any of the things required by the constitution to be done are "insignificant," and may therefore be omitted? … If the court must wink at one violation of the constitution, it must, wink at other violations of it. If the court must approve one violation of the constitution, it must, to be consistent, approve other violations of it. We must be subject to the constitution, or else subject to the whims of those individuals who treat the sanctity of the constitution as fictitious and its provisions as insignificant.

*Id.* at 431, 49 P. at 990.

**C.  The Secretary of State has a non-discretionary duty to certify S.B. 1011 into law.**

The Secretary of State contends that he does not have the authority to certify S.B. 1011 as law because he is not the "timekeeper" for legislation and deadlines. Instead, the Secretary of State asserts that the originating house is the "timekeeper" and is therefore responsible for monitoring and determining whether a veto is timely and therefore effective. The Secretary of State, along with the amici, also argue that it would violate the separation of powers if (1) the Secretary of State could override the Senate and determine that a veto was not timely and ineffective despite the Senate treating the veto as though it was timely and effective; and (2) this Court orders the Secretary of State to certify S.B. 1011 into law. These arguments must fail.

Although there is nothing in the Constitution or statutes to address whether the Secretary of State may override a Senate's vote on a veto that was untimely, Idaho Code section 67-505 resolves the issue. Indeed, under Idaho Code section 67-505's plain language, when the Governor does not timely return a bill with his objections, the bill automatically becomes law with no further action required, and the Secretary of State has a non-discretionary duty to submit the bill as law. Idaho Code section 67-505 states unequivocally that when a bill is not returned to the Governor within five days, it becomes a law and "is authenticated by the governor *causing the fact to be certified thereon by the secretary of state . . . .*" (emphasis added). Nothing in the statute states that when the Governor returns a bill past the deadline the Secretary of State *may* certify the bill as law. Rather, the statute makes clear that once the deadline passes, the bill becomes law and is automatically authenticated by the Governor, which requires the Secretary of State to certify the bill as law in the specified manner. The provision goes on to state that the "certificate must be signed by the Secretary of State and deposited with the laws in his office." I.C. § 67-505. There is nothing discretionary about the Secretary of State's role in the matter: once the deadline has passed for the Governor's return of a veto, the Secretary of State has a non-discretionary duty to certify the bill as law.

In any event, the Secretary of State has acknowledged that he has a duty to certify S.B. 1011 as law if this Court enters an order "directing the Secretary of State to issue the certification under Idaho Code § 67-505 that S. 1011 became law without the Governor's signature." Thus, it is irrelevant whether the Secretary of State is a "timekeeper" for legislation and deadlines. Instead, the relevant inquiry is simply whether this Court can order the Secretary of State to

17

certify S.B. 1011 as law. The Secretary of State and the amici argue that ordering the Secretary of State to do so would violate the separation of powers.

The Idaho Constitution defines the roles of our three branches of government. Idaho Constitution, article II, section 1 provides that "[t]he powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted."

Although it is true that one branch of government cannot usurp the powers of another branch of government, one branch of government can certainly challenge the exercise of those powers. It is axiomatic that each of the branches of government serves as a check against the powers of the others to ensure that each branch is acting within the scope of its authority and consistent with the Constitution. It is this Court's responsibility to ensure that the Idaho Constitution's mandate that "[a]ll political power is inherent in the people [and] Government is instituted for their equal protection and benefit" is zealously protected. Thus, "if a Governor manipulates the veto power [] [this Court] will [] intervene to forestall such conduct." *Washington State Legislature v. Lowry*, 931 P.2d 885, 891–92 (Wash. 1997). Thus, it is this Court's duty to intervene to prevent the Governor and the Senate from circumventing the Constitution and manipulating the veto power in this case.

*Cenarrusa* supports the conclusion that this Court may intervene to prevent the Governor and the legislature from manipulating the veto power. In that case, the Governor was presented with bills three days after the Legislature had adjourned *sine die*. *Id.* at 405–06, 582 P.2 at 1083–84. On the eleventh day after adjournment, excluding Sundays, but on the eighth day after the bills had been presented to the Governor, the Governor vetoed two bills by sending his objections to the Secretary of State. *Id.* The Secretary of State refused to honor the vetoes on the basis that they were untimely, proceeded to certify the bills as law, and then initiated legal action to resolve the controversy. *Id.* This Court took the case and resolved the validity of the Governor's vetoes. That case is important in two respects. First, the case demonstrates that in the past, the Secretary of State has acted consistently with the plain language of Idaho Code section 67-505 and disregarded a Governor's veto and certified the bill as law when the veto was untimely. Second, that case indicates that this Court can determine whether a veto was valid and

18

effective without violating the separation of powers. Although *Cenarrusa* did not specifically address the separation of powers, the case demonstrates this Court's willingness to rule on whether an act of a co-equal branch has violated the Constitution.

Furthermore, this Court has stated:

> There is no intention disclosed in the constitution to make the legislature the exclusive judges of the constitutionality of its acts. The legislature must, in the very nature of things, use its judgment, in the first instance, as to whether a proposed action by it is constitutional or not, or whether it is acting in the manner required by the constitution. But whether the legislature should make an honest mistake, or perversely violate the constitution, the remedy for such violation exists, nevertheless, and courts must refuse to aid and abet such violations of the constitution. The court does this by refusing to recognize the validity of any act passed in violation of the mandates of the constitution.

*Cohn*, 5 Idaho at 436, 49 P. at 992. Thus, this Court has recognized that it has the power to review the legislature's actions to ensure that they comply with constitutional requirements and that it is this Court's duty to remedy any violations. Consequently, it cannot be said that it would violate the separation of powers if this Court orders the Secretary of State to certify S.B. 1011 as law. Because we conclude that the Secretary of State had a clear, non-discretionary duty to certify S.B. 1011 as law, the next issue is whether a writ of mandamus is the appropriate remedy to ensure that duty is carried out.

### D. A writ of mandamus is an appropriate remedy in this case.

The amici contend that a writ of mandamus is an inappropriate remedy in this case. Treasure Valley Racing, LLC, argues that a writ of mandamus is inappropriate because the Tribe has not shown "sufficient facts concerning a possible constitutional violation of an urgent nature," or an issue of "great public importance." The Governor, Intermountain Racing and Entertainment, LLC, and Coeur d'Alene Racing, Ltd., argue that the Secretary of State did not have a clear legal duty to certify S.B. 1011 as law and that the Tribe does not have a clear legal right to have S.B. 1011 certified as law. They contend that because both of these things must be shown before the Court can issue a writ of mandamus, the Tribe's failure to make such showings is detrimental to its request for a writ. The Governor also asserts that a writ of mandamus is an inappropriate remedy because there is an adequate remedy at the district court level and in the legislature.

As stated above, this Court may issue a writ of mandamus "to compel the performance of an act which the law especially enjoins as a duty resulting from an office . . . ." I.C. § 7-302. This

19

Court has held that mandamus is the proper remedy for one seeking to require a public officer to carry out a clearly mandated, non-discretionary ministerial act. *Cowles Publ'g Co. v. Magistrate Court*, 118 Idaho 753, 760, 800 P.2d 640, 647 (1990). However, the existence of an adequate remedy in the ordinary course of law, either legal or equitable in nature, will prevent the issuance of a writ of mandamus. *Idaho Falls Redev. Agency v. Countryman*, 118 Idaho 43, 44, 794 P.2d 632, 633 (1990). The party seeking the writ of mandamus has the burden of proving the absence of an adequate, plain, or speedy remedy in the ordinary course of law. *Id.*

A writ of mandamus is an appropriate remedy in this case. The Secretary of State, a public officer, had a clear, non-discretionary ministerial duty to certify S.B. 1011 as law when the five-day deadline for the bill's return passed. Furthermore, as discussed above, the Tribe has a legal right to ensure that the Secretary of State comply with his non-discretionary duty to certify S.B. 1011 as law. Finally, as the Tribe points out, there is no adequate, plain, or speedy remedy in the court of the law. Although it is true that the district court and the legislature are also proper forums to resolve this dispute, the facts in this case demonstrate a clear constitutional violation, and the resolution of the case involves an important constitutional question. Furthermore, the effective date of S.B. 1011 was July 1, 2015. Thus, it is unlikely that the district court and the legislature could offer a speedy remedy considering the time-sensitive nature of this case and the important constitutional question at stake. This Court has a significant interest in taking this case and issuing a writ of mandamus to correct the constitutional violation that has occurred. Thus, a writ of mandamus compelling the Secretary of State to certify S.B. 1011 as law is an appropriate remedy in this case.

In sum, this Court may exercise jurisdiction over this case pursuant to article V, section 9 of the Idaho Constitution. The Idaho Constitution clearly states that the Governor must return a veto within five days, which means the Governor must return the veto by physically delivering the bill to the originating house or an appropriate official under the code within five days. If the Governor fails to return the veto within five days, the Constitution and our statutory provisions make clear that the bill automatically becomes law as though the Governor had signed it, and that the Secretary of State then has a non-discretionary duty to certify the bill as law. In this case, the unambiguous and uncontroverted facts in the Senate Journal conclusively establish that the Governor's veto was not timely returned to the originating body—the Senate—or to any other official listed under Idaho Code section 67-504. Therefore, under the Constitution's plain

language, S.B. 1011 automatically became law as if the Governor had signed it. Furthermore, pursuant to the Constitution, because the Governor failed to return the veto within five days, the Secretary of State had a non-discretionary duty to certify S.B. 1011 as law. Finally, a writ of mandamus compelling the Secretary of State to certify S.B. 1011 as law is an appropriate remedy in this case and does not violate the separation of powers.

**E. The Tribe is entitled to attorney fees on this Writ of Mandamus.**

The Tribe requests attorney fees under Idaho Code section 12-117 and Idaho Code section 12-121.

### 1. Attorney fees are not available under Idaho Code section 12-117.

Idaho Code section 12-117(1) provides:

> Unless otherwise provided by statute, in any proceeding involving as adverse parties a state agency or a political subdivision and a person, the state agency, political subdivision or the court hearing the proceeding, including on appeal, shall award the prevailing party reasonable attorney's fees, witness fees and other reasonable expenses, if it finds that the nonprevailing party acted without a reasonable basis in fact or law.

This statute authorizes attorney fees in mandamus proceedings. *Musser v. Higginson*, 125 Idaho 392, 397, 871 P.2d 809, 814 (1994). However, the Tribe cannot recover attorney fees under this statute because the Secretary of State is not a "state agency" or a "political subdivision."

Indeed, Idaho Code section 12-117 defines "state agency" as "any agency as defined in section 67-5201, Idaho Code." I.C. §12-117(5)(d). In turn, Idaho Code section 67-5201(2) defines "state agency" as:

> [E]ach state board, commission, department or officer authorized by law to make rules or to determine contested cases, **but does not include the legislative or judicial branches, executive officers listed in section 1, article IV, of the constitution** of the state of Idaho in the exercise of powers derived directly and exclusively from the constitution, the state militia or the state board of correction.

Idaho Constitution, Article IV, section 1 lists as executive officers the "governor, lieutenant governor, Secretary of State, state controlled, state treasurer, attorney general and superintendent of public instruction." Idaho Const. art IV, § 1. Consequently, the Secretary of State is not a "state agency" for purposes of Idaho Code section 12-117.

Idaho Code section 12-117(5)(d) defines "political subdivision" as "a city, a county, any taxing district or a health district." Thus, the Secretary of State is not a "political subdivision"

either. Because the Secretary of State is not a state agency or a political subdivision for purposes of Idaho Code 12-117, the Tribe may not recover attorney fees under that statute.

## 2. **The Tribe is entitled to attorney fees under Idaho Code section 12-121.**

Idaho Code section 12-121 provides:

> In any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties, provided that this section shall not alter, repeal or amend any statute which otherwise provides for the award of attorney's fees. The term "party" or "parties" is defined to include any person, partnership, corporation, association, private organization, the state of Idaho or political subdivision thereof.

Here, this writ against the Secretary of State is essentially an action against the State of Idaho. In *Chastain's, Inc. v. State Tax Comm'n*, 72 Idaho 344, 350, 241 P.2d 167, 170 (1952), this Court stated that the proceedings against the State Tax Commission were "in effect an action against the State of Idaho." In *Chastain's*, this Court noted that the history of the use of writs of prohibition in Idaho "shows that it has been used against the contemplated actions of public officers, boards and commissions of the state in numerous instances." *Id.* at 351, 241 P.2d at 170. The Court went on to conclude that because writs of prohibition are used with such frequency against public officers, bodies and commissions, Idaho Code section 7-312 provided for the taxation of costs against the state, by necessary implication. *Id.*

Similarly, this Court has held that an action against the Board of Barber Examiners was an action against the State. *Rickel v. Bd. of Barber Examiners*, 102 Idaho 260, 261, 629 P.2d 656, 657 (1981) ("As this Court found the necessary implication in [] 12-121 to award costs and attorney fees against a municipality in [*Averitt v. City of Coeur d'Alene*, 100 Idaho 751, 605 P.2d 515 (1980)], and against a county in [*Merris v. Ada Cnty.*, 100 Idaho 59, 593 P.2d 394 (1979)], we hold that the same necessary implication exists to award costs and attorney fees against the state."). Finally, in *Grant Const. Co. v. Burns*, 92 Idaho 408, 412, 443 P.2d 1005, 1009 (1968), this Court determined that when the Idaho Board of Highway Directors entered into a highway construction contract, it was "the state, acting through [the directors]." As the state can generally only act through its officers, actions against the state necessarily include by implication actions against public officials such as the Secretary of State. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself."). Here, when the Secretary of State refused

22

to certify S.B. 1011 as law, he was acting on behalf of the State. Thus, we conclude that the action against the Secretary of State in this case is an action against the State for purposes of Idaho Code section 12-121.

This Court is also a "judge" for purposes of Idaho Code section 12-121. Indeed, this Court held that for purposes of Idaho Code section 12-121, "the singular 'judge' should also be construed to mean the plural 'judges' or 'justices,' and we hold that the statutory power to award attorneys fees applies to the members of this court as well as to the district court judges throughout the state." *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). Thus, this Court is a "judge" under Idaho Code section 12-121.

Finally, a writ of mandamus is a "civil action." Prior to the enactment of Idaho Code section 12-121 in 1976, this Court held that a writ of prohibition is a civil action. *Chastain's, Inc.*, 72 Idaho at 350, 241 P.2d at 170. A writ of prohibition is the counterpart of a writ of mandamus. *Bopp v. City of Sandpoint*, 110 Idaho 488, 490, 716 P.2d 1260, 1262 (1986). Because proceedings for a writ of prohibition are civil actions, so too are proceedings for a writ of mandamus. *See Rhoades v. State*, 149 Idaho 130, 133, 233 P.3d 61, 64 (2010) (stating that "*Thompson v. Hagan* was a civil action in which the defendants sought a writ of mandate from this Court which would have compelled the district judge to apply the Idaho guest statute, now codified as I.C. § 49-2415."). We presume that the legislature was fully aware of the existing judicial decisions when it enacted Idaho Code section 12-121. Thus, we conclude that a writ of mandamus is a civil action for purposes of Idaho Code section 12-121.[6]

In sum, for purposes of Idaho Code section 12-121, an action against the Secretary of State is an action against the state of Idaho; this Court is a judge; and a writ of mandamus is a civil action. Thus, Idaho Code section 12-121 applies to this case and fees may be awarded to the Tribe if appropriate under that section.

The standard for awarding attorney fees under Idaho Code section 12-121 is essentially the same as that under Idaho Code section 12-117. This Court awards fees under Idaho Code section 12-117 "if it finds that the nonprevailing party acted without a reasonable basis in fact or law." Similarly, under Idaho Code section 12-121, this Court awards fees to the prevailing party

---

[6] We recognize that prior to the adoption of the Idaho Rules of Civil Procedure, there were two cases in which this Court held that proceedings for a writ of mandamus were not "civil actions." However, the statute that the Court relied on in those two cases to reach that conclusion was repealed in 1975. Therefore, those cases that determined writs of mandamus are not civil actions are no longer binding on that point.

"when this court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation." *Minich*, 99 Idaho at 918, 591 P.2d at 1085. This Court has stated that "[b]oth I.C. § 12-117 and § 12-121 permit the award of attorney's fees to the prevailing party if the court determines the case was brought, pursued or defended frivolously, unreasonably or without foundation." *Nation v. State, Dep't of Correction*, 144 Idaho 177, 194, 158 P.3d 953, 970 (2007).

Based on our analysis in the sections above, we conclude that the Secretary of State defended this writ unreasonably and without foundation. Indeed, the uncontroverted facts conclusively establish that the veto was delivered to the President Pro Tempore on April 6, 2015, which was well past the five-day deadline under the Constitution. Although the Secretary of State suggested that the bill could have been returned to "a potential of thirty-seven possible recipients" under Idaho Code section 67-504, that argument is without merit. There is only one original bill presented to the Governor, and since the Senate Journal conclusively establishes that S.B. 1011 was returned to the President Pro Tempore after the deadline, it is unreasonable and disingenuous to even suggest that the bill could have been returned to any other Senate official at an earlier time. Because the Governor failed to return S.B. 1011 within five days, the Constitution makes crystal clear that S.B. 1011 automatically became law as if the Governor had signed it and therefore, the Secretary of State had a non-discretionary duty to certify it as law. Therefore, we conclude that the Secretary of State defended this writ unreasonably and without foundation. Consequently, the Tribe is entitled to attorney fees under Idaho Code section 12-121. However, the Tribe is only entitled to attorney fees against the Secretary of State on the substantive issues raised by the Secretary of State. The Tribe is not entitled to attorney fees against the amici because they are not parties to this action.

## IV. CONCLUSION

For the reasons stated above, we grant the Tribe's petition for a writ of mandamus and order the Secretary of State to certify S.B. 1011 as law. Attorney fees and costs to the Tribe from Respondent.

Chief Justice J. JONES and J. HORTON, **CONCUR.**

Justice EISMANN, specially concurring.

I concur in the majority opinion and write to further explain that the only arguments made by the Deputy Attorney General on behalf of the Secretary of State were frivolous and

24

disingenuous, thereby requiring an award of attorney fees to the Coeur d'Alene Tribe. In the brief filed on behalf of the Secretary of State, the Deputy Attorney General argued only one issue—"whether § 67-505 imposes on him the ministerial, non-discretionary duty urged by Petitioner." The Deputy Attorney General reiterated, "That substantive question, again, is the only issue which Respondent addresses."

**The Deputy Attorney General's frivolous argument regarding Idaho Code section 67-505.**

Article IV, § 10, of the Idaho Constitution provides, insofar as is relevant, "Any bill which shall not be returned by the governor to the legislature within five (5) days (Sundays excepted) after it shall have been presented to him, shall become a law in like manner as if he had signed it." It is uncontradicted that the Governor received Senate Bill No. 1011 on Monday, March 30, 2015, and that he did not return the bill to a senator until six days later (excluding Sunday) on Monday, April 6, 2015. Thus, it is absolutely clear that the bill became law pursuant to the Idaho Constitution because it was not returned to the legislature timely. The only substantive issue is whether under those facts, the Secretary of State had a nondiscretionary duty under Idaho Code section 67-505 to certify the bill as law.

That statute is unambiguous. It states, insofar as is relevant, as follows:

> Every bill which has passed both houses of the legislature, and has not been returned by the governor within five (5) days, thereby becoming a law, is authenticated by the governor *causing the fact to be certified thereon by the secretary of state* in the following form: "This bill having remained with the governor five (5) days (Sundays excepted), and the legislature being in session, it has become a law this .... day of ...., ....," *which certificate must be signed by the secretary of state* and deposited with the laws in his office. . . . .

I.C. § 67-505 (emphases added).

If a bill passed by both houses is not returned by the governor within five days, the secretary of state is statutorily obligated by Idaho Code section 67-505 to certify that the bill has become law. As the statute is written, the governor's failure to return a vetoed bill timely is the required authentication that causes the secretary of state to execute the required certificate. The statute does not require any further action by the governor. Whether section 67-505 should be construed as written was the only substantive issue.

Idaho Code section 67-505 states that "[e]very bill which has passed both houses of the legislature, and has not been returned by the governor within five (5) days, thereby becoming a

25

law, *is* authenticated by the governor." (emphasis added). The issue, as framed by the Deputy Attorney General, is what the meaning of the word "is" is.

In the argument in his brief regarding section 67-505, the Deputy Attorney General began by mischaracterizing the statute and asserting that "is" authenticated by the governor means "shall be" authenticated by the governor. The Deputy Attorney General wrote:

> That statute, however, requires the Secretary of State to certify as law a bill "authenticated by the governor" as "ha[ving] not been returned by the governor within five (5) days"; the Governor made no such authentication here and there is nothing for the Secretary of State to certify pursuant to § 67-505.

He repeated that mischaracterization at the end of his argument by writing:

> Respecting the legislative transaction between the Governor and the Legislature, the Constitution, implementing statutes and case law allow for three circumstances in which the Secretary of State can certify a bill as law:
> 1. *Authentication by the Governor* that the bill becomes law without his signature under Idaho Code § 67-505;
> 2. Authentication by the originating house that the bill has not been returned in accordance with Article IV, § 10 and thereby becomes law without the Governor's signature; or
> 3. A court order directing the Secretary of State [to] issue the certification under § 67-505 that S. 1011 becomes law without the Governor's signature.

(emphasis added).

The Deputy Attorney General states that "the Constitution, implementing statutes and case law allow for three circumstances in which the Secretary of State can certify a bill as law." He does not cite any provision in the Constitution, in a statute, or in case law that supports that assertion, because there is none. Although he mischaracterizes section 67-505 regarding "authentication by the governor," there is no mention in the statute of any "authentication by the originating house." A writ of mandate from this Court can certainly direct the secretary of state to perform his nondiscretionary duty as set forth in section 67-505, but there is nothing in the statute indicating that a writ of mandate is a prerequisite for the secretary of state to do so.

In his argument, the Deputy Attorney General simply misrepresented the statute by rearranging words to make it appear that the governor must take action to authenticate the fact that he had not returned the bill within the required five days. As shown above, the governor's failure to return that bill within the five-day period *is* the required certification, which triggers the mandatory requirement that the secretary of state certify the bill as a law. The Deputy

26

Attorney General did not present any authority or cogent argument to support his assertion that the word "is" should be read "shall be."

The historical record likewise does not support the Deputy Attorney General's mischaracterization of the statute. The Territory of Idaho was created in 1863. An Act to Provide a Temporary Government for the Territory of Idaho, § 1, 12 Stat. 808, 808-09. That legislation included a provision stating, "If any bill shall not be returned by the governor within three days (Sundays excepted) after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the assembly, by adjournment, prevent its return; in which case it shall not be a law." *Id*. § 6, 12 Stat. 808, 811. In 1887, the territorial legislation enacted what has now become Idaho Code section 67-505. As enacted in 1887, the statute stated:

> Every bill which has passed both Houses of the Legislature, and has not been returned by the Governor within three days, thereby becoming a law, is authenticated by the Governor causing the fact to be certified thereon by the Secretary of the Territory in the following form: "This bill having remained with the Governor three days (Sundays excepted), and the Legislature being in session it has become a law this day of A. D. _____," which certificate must be signed by the Secretary of this Territory and deposited with the laws in his office.

Rev. Stat. of Idaho Territory § 154 (1887). The territorial legislature took a great body of its statutory law from California. *Merchants' Protective Ass'n v. Jacobsen*, 22 Idaho 636, 641, 127 P. 315, 317 (1912). In 1852, California had enacted a statute very similar to section 154 (now section 67-505), which stated:

> Every Bill which has passed both Houses of the Legislature, and shall not be returned by the Governor within ten days, having thereby become a Law, shall be authenticated by the Governor, causing the fact to be certified thereon by the Secretary of State, in the following form:
> "This Bill having remained with the Governor ten days, (Sundays excepted,) and the Senate and Assembly being in session, it has become a Law, this _____ day of _____, A. D. _____," which certificate shall be signed by the Secretary of State, and deposited with the Laws in his Office.

An Act for the Authentication of Statutes Without the Approval of the Governor, ch. 49, § 2, 1852 Cal. Sess. Laws 112, 112-13. Because of the similarity between the two statutes and the fact that the Idaho territorial legislature routinely copied statutes from California, it is apparent that section 154 was copied from the California statute. In copying the statute, the Idaho territorial legislature made a significant change.

The California statute stated that the governor's failure to return a vetoed bill within the prescribed time period "shall be authenticated by the Governor, causing the fact to be certified thereon by the Secretary of State." In 1870, the Governor of California failed to return a vetoed bill timely, and he refused to execute the required authentication. As a result, a writ of mandate had to be obtained from the California Supreme Court to command the governor to execute the authentication. *Harpending v. Haight*, 39 Cal. 189, 1870 WL 857 (Cal. 1870). The statute enacted by the Idaho territorial legislature did not include the wording "*shall be* authenticated by the Governor." Instead, the wording was "*is* authenticated by the Governor." The change in the wording was obviously made to avoid the necessity of obtaining a writ of mandate to command the governor to execute an authentication if he failed to return a vetoed bill timely. Section 154 (now section 67-505) provided that the governor's inaction—his failure to return the vetoed bill timely—is the authentication, which causes the fact to be certified by the secretary of the territory then and the secretary of state now.

**The Deputy Attorney General's disingenuous arguments regarding the facts.**

The undisputed facts are that the Governor received the bill on March 30, 2015, and that the five-day period for vetoing it and returning it to the Senate expired on Saturday, April 4, 2015. On Thursday, April 2, 2015, the Senate adjourned until 1:30 p.m. on Monday, April 6, 2015. The Governor's veto message is dated April 3, 2015, but the veto would be ineffective unless the bill was returned to the Senate on or before April 4, 2015. Idaho Const. art. IV, § 10.

Idaho Code section 67-504 sets forth a procedure for returning a vetoed bill when the house in which the bill originated has adjourned for the day but not for the session. It states:

> If, on the day the governor desires to return a bill without his approval and with his objections thereto to the house in which it originated, that house has adjourned for the day (but not for the session), he may deliver the bill with his message to the presiding officer, clerk, or any member of such house, and such delivery is as effectual as though returned in open session, if the governor, on the first day the house is again in session, by message notifies it of such delivery, and of the time when, and the person to whom, such delivery was made.

Because the Senate had adjourned on April 2, 2015, and would not be back in session until 1:30 p.m. on April 6, 2015, the Governor could return Senate Bill No. 1011 on or before Saturday April 4, 2015, by delivering it to the President of the Senate, Lieutenant Governor Brad Little; to the Secretary of the Senate, Jennifer L. Novak; or to any senator. However, the statute provides that delivery to one of those persons would only be effective "if the governor, on the

first day the house is again in session, by message notifies it of such delivery, and of the time when, and the person to whom, such delivery was made." *Id*. There is no contention that the Governor did so in this case.

On April 6, 2015, the Secretary of the Senate presented a letter to the President of the Senate notifying him that Senate Bill No. 1011 had not been returned to her, nor to her knowledge had there been any attempt to return it to her. She also stated that correspondence is routinely returned to her by slipping it under the door of her office, and that other correspondence was slipped under her door and returned "in accordance with Article IV, §10 and Idaho Code §§ 67-504 & 505." It is significant that not only was Senate Bill No. 1011 not returned to her, but neither was any correspondence in accordance with Idaho Code section 67-504 regarding that bill.[7]

During oral argument by the Deputy Attorney General, his mischaracterization of Idaho Code section 67-505 was pointed out by quoting the entire relevant portion of the statute. He was then asked twice whether he was aware of any compliance with Idaho Code section 67-504, and each time he responded, "I don't know." Unless he was willfully ignorant of the facts, those responses were false. He was later asked whether anyone had contended that the Governor had sent a message pursuant to section 67-504, and he avoided the question. He was then asked three times whether he was aware of any compliance with section 67-504, and each time he would not answer the question. His refusal to answer the questions spoke volumes as to what the facts

---

[7] The letter from the Secretary of the Senate was transcribed in the Senate Journal. It read as follows:

April 6, 2015

The Honorable Brad Little
President
Idaho State Senate

Dear Mr. President:

This communication reflects that S 1011 was not returned to my office by 4:54 p.m. on April 4, 2015 in my capacity as the Secretary of the Senate. Other correspondence of legislation were [sic] slipped under my door and returned in accordance with Article IV, §10 and Idaho Code §§67-504 & 505. Correspondence of legislation is routinely returned to me in this fashion. To the best of my knowledge no earlier return was attempted to my office, nor was I asked to receive such a return at any earlier time.

Sincerely,
/s/ Jennifer L. Novak
Secretary of the Senate

actually were and demonstrated that his strategy was to attempt to obscure the facts rather than confront them.

Later in his oral argument, the Deputy Attorney General stated that "we" do not know whether or not the return of the bill was timely. He was asked, "Are you aware of any contention that it was returned within five days?" He answered: "Yes, the journal. The journal says that it was returned." He was told: "The journal doesn't say that. It doesn't say that it was returned within five days." He responded: "The journal. The journal. Under the Constitution, the journal is not required to reflect when the legislation was returned." Thus, on one hand the Deputy Attorney General stated that the Senate Journal showed that Senate Bill No. 1011 was returned within five days, and on the other he stated that it is not reflected in the Senate Journal because the Constitution does not require the Senate Journal to reflect when legislation is returned. Those inconsistent answers reflect a lack of candor. Finally, near the end of his oral argument, the Deputy Attorney General was again asked whether anyone had contended that the bill was returned to him or her (other than the President Pro Tempore), and the Deputy Attorney General finally answered truthfully, "Not that I'm aware of."

It is clear that he knew there had been no compliance with section 67-504, because had there been, the message submitted by the Governor in compliance with that statute would be in the possession of the Secretary of State. Any such message would have been delivered to the Secretary of the Senate,[8] and she would have delivered such document to the Secretary of State at the end of the legislative session, receiving from him a certification that he had received it.[9]

---

[8] Senate Rule 8(A) states:

> The Secretary of the Senate shall have custody and supervise the handling of all records, bills, documents, and other official papers; he shall allow no bills, records, or papers to be taken out of his custody or out of the Senate Chamber other than in the regular routine of business; nor shall he at any time or place allow the same to be handled or examined by any person whatsoever except the President, Senators, officers, and employees of the Senate in the discharge of their duties. Public records requests of the Secretary of the Senate shall be handled as provided in Rule 8(E).

[9] Senate Rule 7(E) states:

> It shall be the duty of the Secretary of the Senate, at the close of each session of the legislature, to mark, label, and arrange all bills and papers belonging to the archives of the Senate, and to deliver the same, together with all the books of the Senate, to the Secretary of State, who shall certify to the reception of the same.

Thus, the Secretary of State would know whether or not the Governor had submitted to the Senate a message in compliance with Idaho Code section 67-504.

The Deputy Attorney General admitted during oral argument that if Senate Bill No. 1011 had been returned timely, it would be an absolute defense to this request for a writ of mandamus. He was then asked, "Would a competent attorney, representing the secretary of state, make that inquiry?" He answered, "No." Apparently, his strategy was to be willfully ignorant of the facts. If, in truth, he was ignorant of the facts, he should not have attempted to argue them.

The Deputy Attorney General also argued, "There is a legitimate question before this Court because under 67-504 there is a potential of thirty-seven possible recipients of a returned piece of legislation." That assertion was patently disingenuous. The President Pro Tempore submitted a letter dated April 6, 2015, to the President of the Senate in which the President Pro Tempore stated: "This communication reflects that Senate Bill 1011 was returned to my office at 8:52 am on April 6, 2015. To the best of my knowledge no earlier return was attempted to my office, nor was I asked to receive such a return at any earlier time." There is no doubt that the President Pro Tempore had possession of the original bill because until the vetoed original bill and the Governor's objections to the bill were returned to the Senate, the Senate could not have voted to override the veto. I.C. § 67-503. See also Senate Rule 16.[10] There was only one original of the bill submitted to the Governor, and after vetoing it he was required to return the vetoed original to the Senate.

"All bills or joint resolutions passed shall be signed by the presiding officers of the respective houses." Idaho Const. art. III, § 21. There is only one original of each bill that is signed by the presiding officer of each house and submitted to the governor. "After a bill has

---

[10] Senate Rule 16 states:

> When a bill has been vetoed by the Governor and his objections entered upon the Journal, that bill is before the Senate for reconsideration in accordance with Article 4, Section 10, Idaho Constitution; the question to be put by the Chair is, "Shall Senate Bill _____ pass, the Governor's veto notwithstanding?" When the question of reconsideration has been stated, it shall be in order to receive only the following motions in the order named:
> (1) Adjourn.
> (2) Recess.
> (3) Question of privilege (but personal privilege shall not be permitted).
> (4) Call for orders of the day.
> (5) Previous question.
> (6) Limit debate.
> (7) Postpone to a time certain.

passed both houses, it shall be enrolled not later than 48 hours after the time of passage." Joint Legislative R. 4. "After being enrolled each bill . . . shall be signed first by the presiding officer of the house in which it originated, then by the presiding officer of the other house, and lastly be submitted to the governor for his consideration." Joint Legislative R. 5.

Thus, the Governor received the original of Senate Bill No. 1011, which was signed by the presiding officer of each house. It was the original of the bill upon which the Governor affixed his veto stamp, and it was the original of the bill that had to be returned to the Senate. Article IV, § 10, of the Idaho Constitution states, "Every bill passed by the legislature shall, before it becomes a law, be presented to the governor." The Constitution further provides, "If he approve, he shall sign *it*, and thereupon *it* shall become a law; but if he do not approve, he shall return *it* with his objections to the house in which *it* originated . . . ." *Id.* (emphasis added). All four of the words "it" refer to the original of the bill presented to the governor to which are affixed the signatures of the presiding officers of both houses of the legislature.

Therefore, the Governor would have to have returned the original Senate Bill No. 1011 to someone on or before April 4, 2015, and then returned the same original bill to the President Pro Tempore on April 6, 2015. The Deputy Attorney General would apparently have us believe that the Governor timely returned the original of the bill to some phantom senator, who gave the bill back to the Governor, and then the Governor later returned the original of the bill to the Senate Pro Tempore. There are certainly no facts supporting that fantasy. Indeed, the Governor submitted a brief as amicus curiae in this case, and he did not contend that he returned Senate Bill No. 1011 to anyone other than the President Pro Tempore, nor did he contend that he returned it to the President Pro Tempore on April 4, 2015, or earlier. The Deputy Attorney General was obviously aware of these facts when he disingenuously argued that the Governor could have timely returned the bill to some other senator.

It is undisputed that the Governor returned the vetoed bill to the President Pro Tempore. The President Pro Tempore stated in his letter that the return was made during the morning of April 6, 2015, which would be untimely. When asked about the President Pro Tempore's statement as to when Senate Bill No. 1011 was given to him by the Governor, the Deputy Attorney General stooped to groundlessly disparaging the character of the President Pro Tempore.

Near the end of the Deputy Attorney General's oral argument, the following exchange occurred regarding the statement by the President Pro Tempore in his letter that was transcribed in the Senate Journal:

Justice Eismann:     "I'm reading from the journal. 'Dear President Little: This communication reflects that Senate Bill 1011 was returned to my office at 8:52 a.m. on April 6, 2015.' Should we accept that as true?"

Mr. Kane:     "Mr. Justice, you can accept that as a statement of an individual senator."

Justice Eismann:     "It's in the journal."

Mr. Kane:     "It is in the journal. But the senate had received that communication and without objection reconsidered the bill."

Justice Eismann:     "Is there any conflicting evidence in the journal?"

Mr. Kane:     "There's –"

Justice Eismann:     "Is there any conflicting statement by somebody that they received this earlier in the journal?"

Mr. Kane:     "Well, there's the message of the Governor reflecting that he vetoed it earlier and there's also the action of the senate."

The Governor's message gives no indication as to when he gave the vetoed bill to the President Pro Tempore. Thus, the Deputy Attorney General was contending that the Senate's action in seeking to override the Governor's veto showed that the Senate did not believe the President Pro Tempore's statement that the Governor had returned Senate Bill No. 1011 to him on the morning of April 6, 2015. That the Deputy Attorney General in an act of desperation would make such a groundless attack on the President Pro Tempore's character demonstrates the total lack of substance in the Deputy Attorney General's argument.

Two people have direct knowledge of when the Governor returned Senate Bill No. 1011 to the President Pro Tempore—the Governor and the President Pro Tempore. As stated above, not even the Governor has disputed the President Pro Tempore's statement as to when the bill was returned to him. The record does not reflect why the Senate had a vote to override the

33

Governor's veto when Senate Bill No. 1011 had already become law because the Governor had not returned it timely to the Senate. However, there is absolutely no reason to believe that the Senate did not believe the President Pro Tempore. The fact that the Deputy Attorney General would resort to making such a groundless attack upon the character of the President Pro Tempore demonstrated the total lack of merit in the Deputy Attorney General's arguments regarding the facts.

In summary, the facts are undisputed that the Governor did not return Senate Bill No. 1011 to the Senate within the five days required by the Idaho Constitution, and so the bill became a law. The Secretary of State knew that the bill was not returned to the Senate timely because the documents showing an untimely return had been delivered to the Secretary of State at the end of the session by the Secretary of the Senate. In fact, at one point in his oral argument the Deputy Attorney General apparently inadvertently admitted that the Governor's return was clearly late. He stated that if this Court wants to know "why is it that you [the Senate] took this into consideration *when it was clearly late*, those folks aren't in front of the Court." (emphasis added). Why the Senate had a vote on overriding the Governor's veto is irrelevant. Under the undisputed facts, the bill had already become law. Based upon the undisputed facts known to the Secretary of State, his obligation was clear and unambiguous. He had the statutory duty to certify the fact that the bill had become law as set forth in Idaho Code section 67-505.

The Secretary of State should have done exactly what the iconic former Secretary of State Pete Cenarrusa did when the Governor did not timely veto and return a bill—he refused to recognize the veto. *Cenarrusa v. Andrus*, 99 Idaho 404, 406, 582 P.2d 1082, 1084 (1978). Unfortunately, a majority of the *Cenarrusa* Court chose to disregard the plain meaning of the Idaho Constitution in order to uphold the veto under a hypothetical set of facts that were unrelated to the facts of the case.

In this case, the arguments raised by the Deputy Attorney General in defense of the Secretary of State's failure to perform his statutory duty were frivolous, unreasonable, *and* without foundation. The Deputy Attorney General mischaracterized the applicable law and made disingenuous and false statements regarding the facts. Therefore, the Coeur d'Alene Tribe is entitled to an award of reasonable attorney's fees and other reasonable expenses pursuant to Idaho Code section 12-121.

Justice W. JONES, concurs.

34