# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 43832

ESTATE OF ZIPPORA STAHL,　　　　　 )
DECEASED, KATHLEEN KRUCKER,　 )　　　Boise, January 2017 Term
PERSONAL REPRESENTATIVE,　　　 )
　　　　　　　　　　　　　　　　　　　　 )　　　2017 Opinion No. 93
　　　Plaintiff-Appellant,　　　　　　　 )
　　　　　　　　　　　　　　　　　　　　 )　　　Filed: August 24, 2017
v.　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　　 )　　　Karel A. Lehrman, Clerk
IDAHO STATE TAX COMMISSION,　 )
　　　　　　　　　　　　　　　　　　　　 )
　　　Defendant-Respondent.　　　　　 )

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Jason D. Scott, District Judge.

The judgment of the district court is affirmed.

Ahrens DeAngeli Law Group LLP, Boise, for appellant. Nicholas S. Marshall argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Phil N. Skinner argued.

_____

HORTON, Justice.

This appeal presents a narrow question of law relating to state income tax liability. Kathleen Krucker, personal representative of the Estate of Zippora Stahl, deceased ("the Estate"), appeals from the district court's grant of summary judgment in favor of the Idaho State Tax Commission ("Commission") and the district court's denial of the Estate's motion for reconsideration. The district court held that the Estate could not use a different figure as the starting point for calculating its Idaho taxable income for 2012 than it reported to the Internal Revenue Service for that year. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Zippora Stahl was an Idaho resident who died in 2010. At the time of her death, Stahl owned real property located in Chino, California that had substantially appreciated in value. An

1

ancillary probate proceeding valued the Chino property at $16,000,000. In December of 2012, the Estate sold the Chino property for $16,339,000.[1]

A limited—and necessarily oversimplified—overview of income and estate tax law may be helpful in describing the context of the parties' dispute. For purposes of determining income tax liability arising from the sale of property, a taxpayer's "basis" in the property is used to determine whether there has been a taxable gain and the amount of that gain. Broadly speaking, the taxpayer's basis is the original price paid for the property, subject to adjustment for items such as depreciation (downward) and capital improvements (upward).

For many years, the federal government has imposed taxes on the estates of U.S. citizens and residents. The estate tax is based upon the value of the property owned by the decedent at the time of death. Those who inherit property from the decedent take the property with a "stepped-up basis" for federal income tax purposes. Under Internal Revenue Code section 1014 (Section 1014), the recipient's basis is defined as "the fair market value of the property at the date of the decedent's death." The underlying rationale for Section 1014 is to avoid double taxation; heirs' use of a stepped-up basis avoids imposition of both estate taxes and income taxes on the increased value of the property when it was sold by the heirs.

In 2001, Congress passed legislation which provided for a gradual phase-out of the federal estate tax. Among a number of other provisions, the Economic Growth and Tax Relief Reconciliation Act of 2001, Pub. L. No. 107-16, 115 Stat. 38 (2001) ("EGTRRA"), phased out federal estate taxes, with their complete elimination at the end of 2009. EGTRRA § 511.

In an evident effort to avoid the windfall to heirs that the stepped-up basis provision of Section 1014 would otherwise provide, following repeal of the federal estate tax EGTRRA also provided that Section 1014 would not apply to the estates of people who died after 2009. EGTRRA § 541. Instead, Congress enacted a new Section 1022 of the Internal Revenue Code, which provided that that transferees of property of decedents dying after 2009 would have a basis in the property equal to "the lesser of—(A) the adjusted basis of the decedent, or (B) the

---

[1] This appeal arises from the district court's decisions on the parties' cross-motions for summary judgment. Because the underlying facts are undisputed, the parties submitted a joint stipulation of facts to the district court. Paragraph 4 of the stipulation states that the Estate sold the Chino property for $16,318,909. Paragraph 5 of the stipulation indicates that the "total sales price" was $16,339,000. We have used the latter figure because it is the figure that the Estate used when computing its federal income tax liability. The slight difference in these figures is irrelevant to the legal question presented by this appeal.

2

fair market value of the property at the date of the decedent's death." EGTRRA § 542(a)(2). The basis defined in Section 1022 is referred to as the "modified carryover basis."

In 2010, Congress passed the Tax Relief, Unemployment Insurance Reauthorization, and Job Creation Act of 2010, Pub. L. No. 111-312, 124 Stat. 3296 (2010) ("TRUIRJCA"). Two sections of this omnibus legislation are germane to this appeal.

Section 301(a) of TRUIRJCA provided that "[e]ach provision of law amended by subtitle A or E of title V of [EGTRRA] is amended to read as such provision would read if such subtitle had never been enacted." The statutes repealing the federal estate tax and the new Section 1022 were both located in Subtitle A of Title V of EGTRRA. EGTRRA § 1(c).

Section 301(c) of TRUIRJCA created a unique option for estates of decedents dying in 2010, as was the case with Ms. Stahl, providing:

> Notwithstanding subsection (a), in the case of an estate of a decedent dying after December 31, 2009, and before January 1, 2011, the executor (within the meaning of section 2203 of the Internal Revenue Code of 1986) may elect to apply such Code as though the amendments made by subsection (a) do not apply with respect to chapter 11 of such Code and with respect to property acquired or passing from such decedent (within the meaning of section 1014(b) of such Code). Such election shall be made at such time and in such manner as the Secretary of the Treasury or the Secretary's delegate shall provide. Such an election once made shall be revocable only with the consent of the Secretary of the Treasury or the Secretary's delegate. For purposes of section 2652(a)(1) of such Code, the determination of whether any property is subject to the tax imposed by such chapter 11 shall be made without regard to any election made under this subsection.

TRUIRJCA § 301(c). Although drafted in the nearly impenetrable prose that seems to be the hallmark of federal legislation, the effect of Section 301(c) can be stated in comparatively simple terms. Despite TRUIRJCA's reinstatement of the federal estate tax, Section 301(c) permitted executors of estates of people dying in 2010 to elect not to pay the federal estate tax. In the event that an executor made this election, for income tax purposes, gains from the sale of the decedent's property are measured by the modified carryover basis provided by Section 1022 rather than the stepped-up basis provided by Section 1014. The effect was to permit the estates of 2010 decedents to elect to pay federal income taxes in lieu of estate taxes ("the 1022 Election").

The Estate made the 1022 Election. Thus, following the sale of the Chino property, in its 2012 federal income tax return, the Estate calculated its income tax liability based upon a

3

modified carryover basis of $1,457,341 and a sales price of $16,339,000. This resulted in a taxable gain of $14,881,659 from the sale.

The Estate also filed an Idaho income tax return for 2012. When it did so, the Estate initially used the same modified carryover basis for the Chino property as it had for its federal income tax return. The Estate computed its state tax liability as $1,029,107, which the Estate paid. The Commission processed the Estate's 2012 Idaho income tax return and determined that the Estate had incorrectly computed a credit for taxes paid to other states. The Commission adjusted that credit and issued a Notice of Deficiency Determination ("NODD") in July of 2013. The NODD identified a deficiency of $20,629 for tax year 2012.

The Estate protested the NODD and filed an amended 2012 Idaho income tax return. In the amended Idaho return, the Estate computed the gain from the sale of the Chino property using a stepped-up basis of $16,000,000 rather than the earlier modified carryover basis of $1,457,341. The amended Idaho return was accompanied by a "sample recomputed" federal income tax return.[2] Schedule D to the recomputed federal tax return showed a sales price of $16,318,909 and a stepped-up basis of $16,000,000. The Estate's amended state income tax return identified a taxable gain of $318,909 from the sale of the Chino property, $14,562,750 less than originally reported. Based upon the use of the stepped-up basis, the Estate sought a refund of $1,026,435 of its earlier payment.

In November of 2013, the Commission issued a second NODD denying the Estate's claim for a refund. In October of 2014, the Commission issued a decision upholding the earlier $20,629 tax assessment and denying the Estate's refund claim.

On December 30, 2014, the Estate deposited $21,732 with the Commission to satisfy the $20,629 deficiency, penalty and interest. On January 6, 2015, the Estate filed its complaint with the district court seeking a judgment directing the Commission to refund the deposit and its claimed overpayment of $1,026,435 in state income taxes for 2012, plus accrued interest. The Estate's theory underlying its claim for refund is relatively straightforward: Idaho taxable income for 2012 is to be determined pursuant to the Internal Revenue Code of 1986, as amended, and in effect on January 1, 2012; Section 301(a) of TRUIRJCA repealed the modified carryover basis

---

[2] The "sample recomputed" federal return was evidently created in order to comply with the requirement that the state return be accompanied by "a complete copy of the federal income tax return including all forms, schedules and attachments." IDAPA 35.01.01.800.02. There is no indication that the Estate amended its federal income tax return for 2012.

4

provisions of Section 1022; and thus, despite its exercise of the 1022 Election, the Estate was entitled to use the stepped-up basis provided by Section 1014.

The parties filed cross-motions for summary judgment. The district court granted summary judgment to the Commission. The Estate moved for reconsideration. The district court then issued a memorandum decision denying the Estate's motion for reconsideration, albeit using different reasoning. The Estate timely appealed.

## II. STANDARD OF REVIEW

Our standard of review is well-established:

> "When this Court reviews a district court's decision on summary judgment, it employs the same standard as that properly employed by the trial court when originally ruling on the motion." *Kolln v. Saint Luke's Regl. Med. Ctr.*, 130 Idaho 323, 327, 940 P.2d 1142, 1146 (1997). "The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c) (repealed effective July 1, 2016). . . . "If there is no genuine issue of material fact, only a question of law remains, over which this Court exercises free review." [*Kiebert v. Goss*, 144 Idaho 225, 227, 159 P.3d 862, 864 (2007)].

*Greenfield v. Smith*, 162 Idaho 246, 249, 395 P.3d 1279, 1282 (2017). "Statutory interpretation is a question of law over which this Court exercises free review." *Carrillo v. Boise Tire Co.*, 152 Idaho 741, 748, 274 P.3d 1256, 1263 (2012). When a question before this Court requires statutory interpretation, we apply the following principles:

> The objective of statutory interpretation is to derive the intent of the legislative body that adopted the act. Statutory interpretation begins with the literal language of the statute. Provisions should not be read in isolation, but must be interpreted in the context of the entire document. The statute should be considered as a whole, and words should be given their plain, usual, and ordinary meanings. It should be noted that the Court must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant. When the statutory language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and the Court need not consider rules of statutory construction.

*State v. Schulz*, 151 Idaho 863, 866, 264 P.3d 970, 973 (2011) (quoting *Farber v. Idaho State Ins. Fund*, 147 Idaho 307, 310, 208 P.3d 289, 292 (2009) (internal citations omitted)).

## III. ANALYSIS

As noted earlier, the parties agree as to the underlying facts. Thus, this appeal presents a pure question of statutory interpretation. That question is whether Section 1022 was part of "the

Internal Revenue Code of 1986 of the United States, as amended, and in effect on the first day of January 2012," despite its apparent repeal by Section 301(a) of TRUIRJCA. The Estate contends that the district court erred in its initial determination that Section 1022 was part of the Internal Revenue Code on January 1, 2012, and subsequently erred when deciding the Estate's motion for reconsideration by holding that Section 301(c) of TRUIRJCA applied to the Estate under the Idaho Income Tax Act. Because we find that the district court's original determination was correct, we do not reach the arguments that the Estate advances in support of its claim that the district court erred when deciding its motion for reconsideration.

**A. Section 1022 was part of "the Internal Revenue Code of 1986 of the United States, as amended, and in effect on the first day of January 2012."**

The Idaho Income Tax Act provides for the taxation of "taxable income." "The term 'taxable income' means federal taxable income as determined under the Internal Revenue Code." I.C. § 63-3011B. For tax year 2012, the Idaho Income Tax Act defined the Internal Revenue Code as follows:

> (a) The term "Internal Revenue Code" means the Internal Revenue Code of 1986 of the United States, as amended, and in effect on the first day of January 2012.

> (b) Provisions of the Internal Revenue Code amended, deleted, or added prior to the effective date of the latest amendment to this section shall be applicable for Idaho income tax purposes on the effective date provided for such amendments, deletions, or additions, including retroactive provisions.

I.C. § 63-3004 (2012).[3]

The Estate's position in this appeal rests upon its contention that Section 301(a) of TRUIRJCA repealed Section 1022 of the Internal Revenue Code. Building from this premise, the Estate argues that because Section 1022 was not part of the statutory text of the Internal Revenue Code "as amended, and in effect on the first day of January 2012," it was not incorporated into the Idaho Income Tax Act by Idaho Code section 63-3004.

Section 301(a) of TRUIRJCA provides:

> (a) IN GENERAL.—Each provision of law amended by subtitle A or E of title V of the Economic Growth and Tax Relief Reconciliation Act of 2001 *is amended to read as such provision would read if such subtitle had never been enacted*.

---

[3] Idaho Code section 63-3004 is amended each year to define "Internal Revenue Code" as the "the Internal Revenue Code of 1986 of the United States, as amended, and in effect on the first day of January" of that year. *See e.g.,* 2017 Idaho Sess. L. ch.5, § 1, p. 17, effective retroactive to January 1, 2017 (amending § 63-3004(a) to read "2017").

TRUIRJCA § 301(a) (emphasis added). The Estate contends that this provision operates such that "[Section 1014] was reinstated and [Section 1022], having been added to the Internal Revenue code by EGTRRA, was expressly and retroactively repealed from the IRC [Internal Revenue Code of 1986, as amended and in effect on the first day of January 2012]." In support of this argument, the Estate continues:

> A review of the IRC as published at Title 26 in the United States Code Annotated ("U.S.C.A.") (West) conclusively confirms that TRUIRJCA § 301(a) repealed § 1022 from the IRC in its entirety effective December 17, 2010. The notation in the U.S.C.A. volume states, "§ 1022. **Repealed**. Pub. L. 111-312, Title III, § 301(a), Dec. 17, 2010, 124 Stat. 3300 Effective: December 17, 2010." (Emphasis added). Furthermore, the text of Title 26 as set forth in the U.S.C.A. does not suggest that Repealed § 1022 was repealed for some taxpayers but not others. Therefore, as of January 1, 2012, Repealed § 1022 did not exist as a section of the IRC with respect to any taxpayer.
> The sections of Title 26 are identical to the sections of the IRC. *See* 1 U.S.C. § 204 (note) (entitled "Title 26, Internal Revenue Code.").

(emphasis in original).

We first note that the United States Code Annotated, while generally reliable, is published by a private company. We are not persuaded that this private publication "conclusively confirms" the effect of Section 301(a) of TRUIRJCA. Rather, we consider it our duty to ascertain the meaning and effect of the statute.

The plain language of Section 301(a) does not explicitly repeal Section 1022. Certainly, Congress knows how to unambiguously repeal statutes. *See e.g. Chem. Mfrs. Ass'n v. Envtl. Prot. Agency*, 673 F.2d 507, 513 n.13 (D.C. Cir. 1982). There is a significant distinction between an "express repeal" and "implied repeal" of federal statutes. "An express repeal requires that Congress overtly state with specificity that the subsequent statute repeals a portion of the former statute." *Gallenstein v. United States*, 975 F.2d 286, 290 (6th Cir. 1992). "The intention of the legislature to repeal must be 'clear and manifest.' " *United States v. Borden Co.*, 308 U.S. 188, 198, (1939) (quoting *Town of Red Rock v. Henry*, 106 U.S. 596, 602 (1883)). As the Estate recognizes, "Congress utilizes a clearly defined 'stated means' for denoting enactments that amend the [Internal Revenue Code]" and "when Congress intends to modify the [Internal Revenue Code's] statutory text it does so explicitly and unambiguously." Indeed, Section 1(b) of TRUIRJCA addresses which of its provisions amend the Internal Revenue Code:

> AMENDMENT OF 1986 CODE.--Except as otherwise expressly provided, *whenever in this Act an amendment or repeal is expressed in terms of*

7

an amendment to, or ***repeal of, a section or other provision,*** the reference shall be considered to be made to a section or other provision of the Internal Revenue Code of 1986.

(emphasis added). Thus, we consider whether the language of Section 301(a), providing that Section 1022 was "amended to read as such provision would read if such subtitle had never been enacted," constitutes an implied repeal of Section 1022. We conclude that it does not.

Section 301(a) essentially directs a reader of Section 1022 to see nothing; that is, one is directed to read Section 1022 as if no words appear therein. However, Congress made it clear that one is not always required to blind oneself to that which was written in Section 1022. Section 301(c) of TRUIRJCA provides an exception to the mandate of Section 301(a) in cases where an estate has made the 1022 Election. TRUIRJCA section 301(c) provides:

> (c) SPECIAL ELECTION WITH RESPECT TO ESTATES OF DECEDENTS DYING IN 2010.—Notwithstanding subsection (a), in the case of an estate of a decedent dying after December 31, 2009, and before January 1, 2011, the executor (within the meaning of section 2203 of the Internal Revenue Code of 1986) ***may elect to apply such Code as though the amendments made by subsection (a) do not apply*** with respect to chapter 11 of such Code [providing for the estate tax] and with respect to property acquired or passing from such decedent (within the meaning of section 1014(b) of such Code).

(emphasis added). Thus, executors who make the 1022 Election permitted by Section 301(c) utilize Section 1022 when computing their federal income tax liability. As the Internal Revenue Service explains:

> Subtitle A of title V of the Economic Growth and Tax Relief Reconciliation Act of 2001, P.L. 107-16 (EGTRRA) enacted section 2210, which made chapter 11 (the estate tax) inapplicable to the estate of any decedent who died in 2010 and chapter 13 (the GST tax) inapplicable to generation-skipping transfers made in 2010. On December 17, 2010, TRUIRJCA became law, and section 301(a) of TRUIRJCA retroactively reinstated the estate and GST taxes. However, section 301(c) of TRUIRJCA allows the executor of the estate of a decedent who died in 2010 to ***elect to apply the Internal Revenue Code (IRC)*** as though section 301(a) of TRUIRJCA did not apply with respect to chapter 11 and with respect to property acquired or passing from the decedent (within the meaning of section 1014(b)). Thus, section 301(c) of TRUIRJCA allows the executor of the estate of a decedent who died in 2010 to elect not to have the provisions of chapter 11 apply to the decedent's estate, but rather, ***to have the provisions of section 1022 apply (Section 1022 Election).***

*Method for Making Election to Apply Carryover Basis Treatment under Section 1022 to the Estates of Decedents who Died in 2010 and Rules Applicable to Inter Vivos and Testamentary*

8

*Generation–Skipping Transfers in 2010*, Internal Revenue Bulletin: 2011-35, Notice 2011-66, August 29, 2011 (emphasis added).

In effect, Section 301(c) is the legislative equivalent of a magician's illusion: it seems to cause Section 1022 to disappear, even though Section 1022 reappears if an executor makes the 1022 Election authorized by Section 301(c). Indeed, the Estate concedes that "the basis calculation method provided by repealed § 1022 was 'in effect' with respect to the Estate for federal income tax purposes;" however, the Estate contends that "§ 1022 itself was not in effect as part of the Internal Revenue Code on January 1, 2012 because . . . TRUIRJCA totally and completely repealed it."

In support of this argument, the Estate attempts to analogize this case to 1995 Idaho Attorney General Opinion 95-2. A review of Opinion 95-2 shows that the situations are not analogous. In Opinion 95-2, the Attorney General concluded that a tax bill signed into law on April 11, 1995, with retroactive application to taxpayers for the 1994 tax year was not incorporated into the Idaho Income Tax Act because it was not part of the Internal Revenue Code "as amended, and in effect on the first day of January 1995" pursuant to Idaho Code section 63-3004. This is a reasonable conclusion because, while the tax bill may have had retroactive application, it was not signed into law until after the amendment to Idaho Code section 63-3004 had taken effect on the first day of January 1995.

The situation here is not similar. TRUIRJCA was signed into law in 2010. Prior to TRUIRJCA's enactment, executors of decedents' estates were required to apply Section 1022 and, after TRUIRJCA's enactment, executors of decedents' estates who passed away in 2010 could utilize Section 1014 or elect to utilize Section 1022 as permitted by Section 301(c). There was no point in time where Section 1022 was not part of the Internal Revenue Code.

The Estate further contends that Section 301(c) is simply an "off-code" (i.e., not part of the Internal Revenue Code) provision which Congress used to "apply the basis calculation formula of Repealed § 1022 to the assets of estates making the Public Law Election" rather than Section 1022 itself. The Estate's arguments are not supported by the text of the statutes. TRUIRJCA makes no reference to a "basis calculation formula"; rather, it provides that executors of estates making the 1022 Election may "apply" Section 1022 of the Internal Revenue Code. As the district court wrote:

That the Estate made the Section 1022 Election under an "off-code" provision does not mean, however, that the "off-code" provision itself is the mechanism for determining the Estate's federal taxable income. To the contrary, the "off-code" provision at issue here directs electing taxpayers, like the Estate, to the Internal Revenue Code provision—Section 1022—that must be applied in determining basis and, by extension, federal taxable income. Thus, the Estate has no way around the conclusion that Section 1022 was "in effect on the first day of January 2012," as that phrase is used in I.C. § 63-3004, with respect to the Estate. That Section 1022 was "in effect" with respect to the Estate at that time is clear as a matter of federal law . . . .

Although not a basis for our decision, we observe that our conclusion is consistent with the clearly expressed intent of the Idaho Legislature. Idaho Code section 63-3002 of the Idaho Income Tax Act provides:

> ***It is the intent of the legislature by the adoption of this act***, insofar as possible to make the provisions of the Idaho act identical to the provisions of the Federal Internal Revenue Code relating to the measurement of taxable income, to the end ***that the taxable income reported each taxable year by a taxpayer to the internal revenue service shall be the identical sum reported to this state***, subject only to modifications contained in the Idaho law; to achieve this result by the application of the various provisions of the Federal Internal Revenue Code relating to the definition of income, exceptions therefrom, deductions (personal and otherwise), accounting methods, taxation of trusts, estates, partnerships and corporations, basis and other pertinent provisions to gross income as defined therein, resulting in an amount called "taxable income" in the Internal Revenue Code, and then to impose the provisions of this act thereon to derive a sum called "Idaho taxable income"; to impose a tax on residents of this state measured by Idaho taxable income wherever derived and on the Idaho taxable income of nonresidents which is the result of activity within or derived from sources within this state. All of the foregoing is subject to modifications in Idaho law including, without limitation, modifications applicable to unitary groups of corporations, which include corporations incorporated outside the United States.

I.C. § 63-3002 (emphasis added). "Idaho taxable income is the same as federal taxable income, except that it is 'adjusted' according to the subsections of I.C. § 63–3022." *Potlatch Corp. v. Idaho State Tax Comm'n*, 128 Idaho 387, 389, 913 P.2d 1157, 1159 (1996).

In summary, we hold that Section 1022 was part of "the Internal Revenue Code of 1986 of the United States, as amended, and in effect on the first day of January 2012" and was thereby incorporated into the Idaho Income Tax Act for tax year 2012 pursuant to Idaho Code section 63-3004. Based upon this determination, we do not consider the Estate's claim that the district court erred in evaluating its motion for reconsideration. We affirm the judgment of the district court.

**B. The Estate is not entitled to attorney fees and costs on appeal.**

The Estate requests an award of attorney fees and costs on appeal pursuant to Idaho Code section 63-3049(d) and Idaho Appellate Rules 40 and 41. The Commission does not request attorney fees on appeal. The Estate is not the prevailing party on appeal and is thus not entitled to an award of attorney fees.

## IV. CONCLUSION

We affirm the judgment of the district court. Costs to the Commission.

Chief Justice BURDICK and Justices EISMANN, JONES and BRODY, **CONCUR**.