# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 51788-2024

HAWKINS COMPANIES, LLC, an Idaho limited liability company; PACIFIC WEST COMMUNITIES, INC., an Idaho corporation; and FJ MANAGEMENT INC., a Utah corporation,

    Petitioners,

v.

STATE OF IDAHO, acting by and through its DEPARTMENT OF ADMINISTRATION, acting as the statutory agent for the STATE OF IDAHO TRANSPORTATION DEPARTMENT; and the IDAHO STATE BOARD OF EXAMINERS,

    Respondents,

and

MIKE MOYLE, in his official capacity as Speaker of the House of Representatives of the State of Idaho; and the IDAHO HOUSE OF REPRESENTATIVES,

    Intervenor-Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, August 2024 Term

Opinion filed:  August 13, 2024

Melanie Gagnepain, Clerk

Original proceeding in the Idaho Supreme Court seeking writs of prohibition and mandate.

Petitioners' Verified Petition for a Writ of Prohibition and a Writ of Mandate is <u>dismissed</u>.

Clark Wardle LLP, Boise, for Petitioners. T. Hethe Clark on the briefs.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent Idaho State Board of Examiners. Alan Hurst on the briefs.

Naylor & Hales, P.C., Boise, for Respondents Idaho Department of Administration and Idaho Transportation Department. Joan E. Callahan on the briefs.

Hilty, Bower, Haws & Seable, PLLC, Nampa, for Intervenors-Respondents Mike Moyle and the Idaho House of Representatives. Mark Hilty and Daniel W. Bower on the briefs.

---

ZAHN, Justice.

This original action concerns whether business entities that were the high bidders for surplus state property, but do not have a legally enforceable contract or a clear statutory right to purchase the property, have standing to file an original action to force the Idaho Department of Administration and the Idaho Transportation Department to sell the property. For the reasons discussed below, we hold that they do not and therefore dismiss the Petition for Writ of Prohibition and Writ of Mandate.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case concerns real property owned by the Idaho Transportation Department ("ITD"), located at 3311 West State Street in Boise ("the ITD Campus"). In January 2022, the largest building on the ITD Campus flooded, rendering the building unusable. The flooding exposed fireproofing material that contained asbestos. Any repairs to the building would have to include the remediation of the asbestos. Approximately 600 ITD employees worked in the building. In March 2022, the legislature appropriated $37 million to the Idaho Department of Administration so it could make improvements to the State of Idaho's Chinden Campus, located in West Boise, to enable the relocation of ITD employees to that location. In April 2022, the Idaho Transportation Board ("ITD Board") approved a plan to move the ITD employees to the Chinden Campus.

On August 5, 2022, the ITD Board approved a resolution declaring the ITD Campus as surplus property and transferred custody and control of the property to the State Board of Examiners pursuant to Idaho Code section 67-5709A. That statute governs the process for the sale, transfer or disposition of state administrative facilities and provides:

> When a state agency declares that a state administrative facility is not needed or is unsuitable for its purposes, custody and control shall be transferred to the state board of examiners, which shall immediately transfer authority for the disposition of the property to the department of administration which shall send a notice to all state agencies and institutions that the property is available for other state use. Any state agency interested in leasing or buying the property shall notify the department of administration within the time the department specifies.
>
> If no state agency or institution is interested, the department shall obtain an appraisal and commence procedures to sell the property for the highest price possible. All proceeds from the sale or lease of administrative facilities acquired by

2

the department of administration pursuant to this section, other than proceeds required by law to be deposited in a special fund, less the department of administration's cost of selling or leasing, shall be deposited into the permanent building fund for the purpose of holding such proceeds. Such proceeds in the permanent building fund acquired pursuant to this section may be expended pursuant to appropriation.

I.C. § 67-5709A. Pursuant to this statute, the State Board of Examiners transferred authority for disposition of the ITD Campus to the Department of Administration.

On August 17, 2022, the Department of Administration, consistent with section 67-5709A, sent notice to other state agencies, advising that the ITD Campus was available for purchase. No agencies expressed interest in the property. The Department of Administration thereafter obtained an appraisal of the property, which estimated the property's market value as $38,620,000.

In April 2023, the legislature appropriated $15,000,100 to the Department of Administration to make additional improvements to the Chinden Campus for purposes of relocating the Idaho State Historical Society's preservation facility from the ITD Campus to the Chinden Campus. In that same legislative session, the legislature also appropriated nearly $3,000,000 to ITD for costs associated with relocating to the Chinden Campus.

In May 2023, the Department of Administration opened a request for proposals from private entities for the purchase of the ITD Campus. The Department of Administration received nine proposals. The record suggests that there were multiple rounds of bidding.

In a letter dated September 25, 2023, the Department of Administration advised Hawkins Companies, LLC, Pacific West Communities, Inc., and FJ Management Inc. (collectively "Petitioners") that their bid was selected as "the winning proposal" for the purchase of the ITD Campus. Petitioners' winning bid was for $51,750,000, which exceeded the appraised fair market value of the property. The Department of Administration advised Petitioners that it would send a draft purchase and sale agreement for their review. The letter closed with a statement that the Department of Administration had not yet made a formal offer to sell the property to Petitioners:

> Please note that the delivery of this letter and a draft purchase and sale agreement does not constitute a formal offer to sell the property. The sale of the property is subject to a fully executed purchase and sale agreement.

Over the course of the next six months, Petitioners and the Department of Administration negotiated the terms of the purchase and sale agreement for the ITD Campus. In March 2024, the parties arrived at a mutually agreed upon purchase and sale agreement. Petitioners signed the agreement and sent it to the Department of Administration on March 21, 2024.

3

During this same timeframe, members of the Idaho Legislature publicly declared their concerns with the sale of the ITD Campus. A member of the Joint Finance Appropriations Committee ("JFAC") stated that he and other members of JFAC had been advised by an ITD working group that the estimated proceeds from the sale of the ITD Campus would be $80 to $100 million. During the 2024 legislative session, the legislature attempted to repeal section 67-5709A, but the bill never made it to the Senate floor for a vote.

JFAC inserted language into the appropriations bill for the Department of Administration that revoked the Department's authority to dispose of the ITD Campus and directed that custody and control of the property be transferred to the ITD Board:

> Section 4. DISPOSAL OF PROPERTY. Notwithstanding any other provision of law to the contrary, *the authority of the Department of Administration to dispose of the state administrative facility and property at 3311 W State Street, Boise, Idaho, 83703 is revoked*. Notwithstanding any other provision of law to the contrary, custody and control of the state administrative facility and property at 3311 W State Street, Boise, Idaho, 83703 shall be transferred to the Idaho Transportation Board.

H.B. 726, 67th Leg., 2d Reg. Sess., 2024 Idaho Sess. Laws 1089, 1091 (emphasis added). The legislature passed the bill, and this provision became effective on July 1, 2024. *Id.* JFAC also inserted nearly identical language into ITD's appropriations bill:

> Section 7. STATE STREET PROPERTY. Notwithstanding any provision of law to the contrary, *the authority of the Department of Administration to dispose of the state administrative facility and property at 3311 W State Street, Boise, Idaho 83703 is revoked*. Notwithstanding any provision of law to the contrary, custody and control of the state administrative facility and property at 3311 W State Street, Boise, Idaho 83703 shall be transferred back to the Idaho Transportation Board. Of the amount appropriated in Section 1 of this act, $32,500,000 shall be used for the purpose of rehabilitating the state administrative facility at 3311 W State Street, Boise, Idaho 83703. Funds designated under this section may be used only for the purpose identified in this section. This appropriation is contingent on custody and control of the state administrative facility and property at 3311 W State Street, Boise, Idaho 83703 returning to the Idaho Transportation Board.

H.B. 770, 67th Leg., 2d Reg. Sess., 2024 Idaho Sess. Laws 1085, 1088 (emphasis added). The legislature also passed this bill and the above-quoted provision in ITD's bill became effective on April 10, 2024. *Id.* at 1089.

Petitioners signed and transmitted the purchase and sale agreement to the Department of Administration prior to the effective date of either appropriations bill. However, the Department of Administration never signed the agreement. It now asserts that it did not sign the agreement "because of the legal uncertainty about its authority to sign that agreement given the provisions in

the appropriation and budget." The Department has taken no action to close the sale of the ITD Campus following passage of the appropriations bills.

On April 25, 2024, Petitioners filed an original action with this Court, seeking a writ of prohibition and a writ of mandate against the State of Idaho, acting by and through the Department of Administration, "the State of Idaho Transportation Department," and the Idaho State Board of Examiners. Petitioners allege that the appropriations bills violate Article III, section 16 of the Idaho Constitution. Article III, section 16 generally provides that legislative acts "shall embrace but one subject and matters properly connected therewith[.]" Idaho Const. art. III, § 16. Petitioners allege that the appropriations bills embrace more than one subject because they both appropriate monies for the agencies and revoke the Department of Administration's statutory authority to dispose of the ITD Campus, thereby modifying or amending Idaho Code section 67-5709A.

Petitioners seek the following relief: (1) issuance of a declaratory judgment finding that the offending provisions of the appropriations bills are unconstitutional and severing them from the bills, or alternatively, invalidating the bills in their entirety; (2) issuance of a writ of prohibition forbidding the Department of Administration, the State Board of Examiners, and ITD from giving effect to the offending provisions of the appropriations bills; and (3) issuance of a writ of mandate requiring the Department of Administration to conclude the sale of the ITD Campus pursuant to section 67-5709A.

The Idaho House of Representatives and Mike Moyle, in his official capacity as Speaker of the Idaho House of Representatives (collectively "Moyle"), filed a motion to intervene in this matter, which this Court granted. The State Board of Examiners disclaimed its interest and waived any further participation in the lawsuit, stating it had no position on the sale and had fulfilled its ministerial duties by transferring the ITD Campus to the Department of Administration as obligated by statute. The matter has been fully briefed by the parties. This Court has determined that oral argument is not necessary because this matter can be decided on the pleadings and briefing filed in this matter. *See* I.A.R. 5(d).

## II. ANALYSIS

### A. Petitioners do not have standing to file this action.

*1. Petitioners do not meet the regular standing requirements because a favorable decision is not likely to redress their injury.*

"[I]t is a fundamental tenet of American jurisprudence that a person wishing to invoke a court's jurisdiction must have standing." *Reclaim Idaho v. Denney*, 169 Idaho 406, 418, 497 P.3d

160, 172 (2021) (quoting *Young v. City of Ketchum*, 137 Idaho 102, 104, 44 P.3d 1157, 1159 (2002)). "Standing focuses directly on whether a particular interest or injury is adequate to invoke the protection of judicial decision." *Coeur d'Alene Tribe v. Denney*, 161 Idaho 508, 513, 387 P.3d 761, 766 (2015) (citation omitted). "The inquiry 'focuses on the party seeking relief and not on the issues the party wishes to have adjudicated.'" *State v. Philip Morris, Inc.*, 158 Idaho 874, 881, 354 P.3d 187, 194 (2015) (quoting *Young*, 137 Idaho at 104, 44 P.3d at 1159). "Standing is a preliminary question to be determined by this Court before reaching the merits of the case." *Young*, 137 Idaho at 104, 44 P.3d at 1159. "To demonstrate standing, the plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Idaho State Athletic Comm'n ex rel. Stoddard v. Off. of the Admin. Rules Coordinator*, 173 Idaho 310, ___, 542 P.3d 718, 728 (2024) (internal quotation marks and citation omitted). In other words, the standing test applied by the Court focuses on whether a plaintiff has suffered an injury caused by the challenged conduct and whether the requested judicial relief can prevent or redress the injury. For the reasons discussed below, we conclude that Petitioners have failed to demonstrate an interest or injury that is sufficient to establish standing to invoke this Court's original jurisdiction. Because Petitioners have failed to meet this threshold requirement, we do not reach the questions of whether the appropriations bills violate the Idaho Constitution or whether the requested writs should issue.

The first standing prong "requires a showing of a 'distinct palpable injury[.]'" *Idahoans for Open Primaries v. Labrador*, 172 Idaho 466, ___, 533 P.3d 1262, 1272 (2023) (citation omitted). "A 'palpable injury' is 'an injury that is easily perceptible, manifest, or readily visible.'" *Id*. (citation omitted). To show a palpable injury, "one must allege or demonstrate an injury that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Idaho State App. Pub. Def. v. Fourth Jud. Dist. Ct*., 173 Idaho 140, ___, 540 P.3d 311, 320 (2023) (internal quotation marks omitted) (quoting *Reclaim Idaho*, 169 Idaho at 422, 497 P.3d at 176).

Petitioners assert that they are caught in the middle of a constitutional conflict between executive branch agencies trying to follow the provisions of section 67-5709A and the legislature, which is trying to halt that process. They allege that the legislature's passage of the appropriations bills has caused the Department of Administration to not proceed with the sale of the ITD Campus. Petitioners assert that they "have expended significant sums in reliance on this bidding process and to be prepared to meet the contractual timelines imposed by the State of Idaho."

6

The Department of Administration and ITD admit in their Answer that Petitioners were the high bidder on the sale, that the Department of Administration negotiated terms with Petitioners that were incorporated into a mutually agreeable purchase and sale agreement that was ready for execution by all the parties, and that the Department of Administration is not executing the agreement because of the legal uncertainty created by the passage of the appropriations bills.

We hold that Petitioners have demonstrated a distinct and palpable injury that meets the first standing prong. Based on the Department of Administration's representations that they were the high bidder, and the Department's subsequent negotiations over the next six months to finalize the mutually agreeable terms of a purchase and sale agreement, Petitioners expended significant sums of money to negotiate the agreement and prepare to close the sale in accordance with the State's desired timeline. The Department states that it has not signed the agreement because of legal uncertainty resulting from the legislature's passage of the appropriations bills. The expenditure of significant sums in reliance on the Department of Administration's representations constitutes a distinct and palpable injury for purposes of establishing standing.

The second standing prong requires demonstrating a "fairly traceable causal connection between the claimed injury and the challenged conduct." *Idaho State Athletic Comm'n*, 173 Idaho at ___, 542 P.3d at 729. This prong "examines the connection between the alleged misconduct and injury." *Tidwell v. Blaine County*, 172 Idaho 851, 864, 537 P.3d 1212, 1225 (2023) (cleaned up) (quoting *Tucker v. State*, 162 Idaho 11, 24 394 P.3d 54, 67 (2017)). Petitioners contend that causation exists because the legislature's passage of the allegedly unconstitutional appropriations bills caused the Department of Administration to not sign the mutually agreed upon purchase and sale agreement, thus halting the sale of the ITD Campus. Moyle argues that there is not a sufficient causal connection between the claimed injury and the challenged conduct because the purchase and sale agreement was delivered to the Department of Administration for a final signature on March 21, 2024, yet the appropriations bills were not passed by the legislature until approximately two weeks later.

We hold that Petitioners have demonstrated a fairly traceable causal connection between the Department of Administration's failure to close the sale of the ITD Campus and the passage of the appropriations bills, thereby satisfying the second prong of standing. The Department of Administration admitted in its Answer that it is not executing the purchase and sale agreement because of the legal uncertainty created by the appropriations bills. We disagree with Moyle that

7

there is no causal connection because the Department of Administration could have signed the purchase and sale agreement prior to passage of the appropriations bills. None of the parties dispute that the appropriations bills have halted the sale of the ITD Campus.

"The third standing prong requires demonstrating that 'a favorable decision is likely to redress the injury,'" and that it is not "only speculative that a favorable decision will redress the injury." *Idaho State Athletic Comm'n*, 173 Idaho at ___, 542 P.3d at 729 (alteration and citation omitted). The "redressability element ensures that a court has the ability to order the relief sought, which must create a substantial likelihood of remedying the harms alleged." *Idaho State App. Pub. Def.*, 173 Idaho at ___, 540 P.3d at 322 (quoting *Emps. Res. Mgmt. Co. v. Ronk*, 162 Idaho 774, 777, 405 P.3d 33, 36 (2017)). "Although the second and third prongs overlap, they 'are distinct insofar as causality examines the connection between the alleged misconduct and injury, whereas redressability analyzes the connection between the alleged injury and requested judicial relief.'" *Idaho State Athletic Comm'n*, 173 Idaho at ___, 542 P.3d at 729 (quoting *Tucker*, 162 Idaho at 24, 394 P.3d at 67).

Petitioners argue that a decision by this Court can redress their injury because, but for the conflict between the appropriations bills, the sale of the ITD Campus would be complete to them. Petitioners seek two writs from this Court: (1) a writ of mandate requiring the Department of Administration "to conclude the sale of the ITD Campus pursuant to the Surplus Statute," and (2) a writ of prohibition forbidding the Department of Administration, the State Board of Examiners, and ITD "from giving effect to the Offending Provisions [of the appropriations bills], or in the alternative, the appropriation[s] bills in their entirety." We first consider Petitioners' arguments for how each writ will redress its alleged injury.

On the writ of mandate, Petitioners contend it would redress their injury because they were the high bidder for the ITD Campus and section 67-5709A requires that surplus property be transferred to the Department of Administration and sold for the highest price possible. Petitioners concede that the Department of Administration does not have to sell the property to Petitioners but appear to argue that, to receive the "highest price possible" as required by the statute, the Department of Administration would likely sell to Petitioners because they were the highest bidder.

The State of Idaho and Moyle argue that this Court cannot redress Petitioners' alleged injury because the decision whether to complete the sale is a discretionary decision by the

Department of Administration. Because the decision is discretionary, they argue that this Court cannot order a sale of the ITD Campus to Petitioners. The Department of Administration and ITD agree that the language of section 67-5709A neither mandates that the Department of Administration conclude a sale of surplus property, nor that the Department of Administration sign a contract with the highest bidder. Instead, the Department of Administration and ITD argue that they have discretion in concluding the sale of a surplus property, including whether to complete the sale at all, so this Court cannot issue a writ compelling them to sell the property to Petitioners.

In their reply brief, Petitioners argue that once an agency declares property to be surplus, the Department of Administration is obligated to obtain the highest price possible and then proceed to closing the sale of the property. Petitioners contend that their bid was the highest bid and exceeded the appraised market value of the property. However, Petitioners also concede that the Department of Administration has discretion to determine whether it has been offered the highest price possible and could subsequently re-advertise the property or ask for higher bids. They also concede that the Department of Administration has no obligation to sell the ITD Campus to Petitioners. They argue that the writ of mandate seeks only to compel the Department of Administration to close the sale.

On the writ of prohibition, Petitioners assert it would redress their injury because there is no dispute that the appropriations bills are the reason why the Department of Administration is not proceeding to close the sale. Petitioners argue that forbidding the Department of Administration, the State Board of Examiners, and ITD from implementing the challenged provisions of the bills will allow the Department of Administration to conclude the sale of the ITD Campus.

In response, the State of Idaho and Moyle argue that Petitioners cannot establish that they are entitled to a writ of prohibition because they have not alleged that the Department of Administration, the State Board of Examiners, or ITD are acting in excess of their jurisdiction. Their argument thus focuses on Petitioners' ability to obtain the requested writ, and they contend that if Petitioners are not entitled to the writ, then the Petition cannot redress Petitioners' injury. The Department of Administration and ITD argue that a writ of prohibition is appropriate in this case because the appropriations bills have called into question which state entity has custody and control of the ITD Campus. The appropriations bills mandate that the Department of Administration revert control of the ITD Campus back to the ITD Board. They contend that the provision of the appropriations bills is contrary to section 67-5709A, which states that custody and

9

control lie with the State Board of Examiners after an agency declares that a property is surplus. The Department of Administration and ITD argue that issuance of a writ of prohibition would provide the Department of Administration and ITD with certainty and clarity regarding custody and control of the real property and regarding the applicability of section 67-5709A.

We hold that Petitioners have failed to satisfy the redressability prong for two reasons. First, Petitioners do not have a legally enforceable right to purchase the ITD Campus and therefore they cannot establish a substantial likelihood that the issuance of a writ would result in the sale of the ITD Campus to them. The Department of Administration and Petitioners have no binding contract for the sale of the ITD Campus. The September 25, 2023, letter sent from the Department of Administration to Petitioners specifically stated that the letter was not a formal offer to sell the ITD Campus. Despite negotiating a mutually agreeable purchase and sale agreement, the Department of Administration did not sign the purchase and sale agreement. In the absence of a signed contract, the Department of Administration is not compelled to sell the ITD Campus to Petitioners.

Second, the language of section 67-5709A does not create a legally enforceable right in favor of Petitioners to purchase the ITD Campus. "Statutory interpretation is a question of law over which this Court exercises free review." *Est. of Stahl v. Idaho State Tax Comm'n*, 162 Idaho 558, 562, 401 P.3d 136, 140 (2017) (quoting *Carrillo v. Boise Tire Co.*, 152 Idaho 741, 748, 274 P.3d 1256, 1263 (2012)). Relevant here, section 67-5709A provides that, "[i]f no state agency or institution is interested, the department *shall* obtain an appraisal and *commence procedures to sell the property for the highest price possible*. I.C. § 67-5709A (emphasis added). The plain language of the statute requires that, (1) if a property is surplus and no other state agency is interested, the Department of Administration must begin procedures to sell that property, and (2) if that property is sold, it must be for the highest possible price. Other than these two criteria, the statute leaves to the discretion of the Department of Administration all other aspects of the sale, such as when to commence the sale, who to sell the property to, and the negotiation of any other material terms that are part of the sale. The statute does not mandate that the Department of Administration conclude the sale of the ITD Campus at all. Both Petitioners and the Department of Administration agree that the Department of Administration has discretion in concluding the sale of the ITD Campus. Moreover, Petitioners have conceded that they are not seeking a writ compelling a sale to them.

As a result, Petitioners cannot establish that issuance of either writ is substantially likely to redress their injury—the expenditure of significant funds in furtherance of the purchase of the ITD Campus. Without an enforceable right to force the sale to Petitioners specifically, there is no substantial likelihood that a favorable decision by this Court will redress Petitioners' injury. It is entirely speculative that granting either of the requested writs will result in a sale of the ITD Campus, much less a sale to Petitioners. While Petitioners hope for that outcome because they were the high bidders in September 2023, they also admit that the Department of Administration has discretion whether to continue with the current sale or seek a higher price. Petitioners cannot establish the redressability element of standing because they do not have a legally enforceable right to purchase the ITD Campus.

2. *Petitioners have not established that they meet the elements of relaxed standing.*

Alternatively, Petitioners argue that they meet the elements of the relaxed standing doctrine. "Over the last few decades this Court has relaxed traditional standing requirements in order to hear cases involving alleged constitutional violations that would otherwise go unaddressed because no one could satisfy traditional standing requirements." *Reclaim Idaho v. Denney*, 169 Idaho 406, 422, 497 P.3d 160, 176 (2021). "Where petitioners have not met the traditional standing requirements, we have nevertheless held that we may 'exercise jurisdiction to review a petition for extraordinary relief where the petition alleges sufficient facts concerning a possible constitutional violation of an urgent nature.'" *Id*. (quoting *Coeur d'Alene Tribe v. Denney*, 161 Idaho 508, 513–14, 387 P.3d 761, 766–67 (2015)). "To qualify for relaxed standing, one still must show: (1) the matter concerns a significant and distinct constitutional violation, and (2) no party could otherwise have standing to bring a claim." *Id*. (emphasis omitted).

Petitioners argue that the question of whether the appropriations bills can modify general law is a constitutional question of significant import that requires immediate resolution. Petitioners also contend that they are the only party able to bring this claim.

Moyle responds that Petitioners cannot meet the requirements of relaxed standing because this matter does not concern an important constitutional violation, but instead a technical requirement in two appropriations bills. Moyle argues that the failure of a single real estate deal to go forward is not a significant constitutional violation that allows for relaxed standing.

11

We hold that Petitioners have established the first element of relaxed standing. Petitioners allege that the legislature exceeded its constitutional authority when it passed the appropriations bills. If true, that would constitute a significant and distinct constitutional violation.

However, we hold that Petitioners have failed to establish the second element of relaxed standing. In this instance, there are other parties who would have standing to bring the constitutional claim: the Department of Administration and ITD. In their augmented response brief, the Department and ITD urge us to consider the Petition because the appropriations bills interfere with their statutory authority:

> As described in detail above, the Challenged Provisions of the Appropriations Bills alter or conflict with the applicability of and the express authority granted to these executive agencies by the Surplus Statute (a general law) to sell the property. These are the hallmarks of an appropriation act that is in violation of the single-subject requirement.
>
> . . . .
>
> Respondents, as part of the executive branch, are constitutionally and statutorily required to execute the law and policy set by the legislature. To that end, the legislature set the state's policy regarding the disposal of administrative facilities in the Surplus Statute, a policy Respondents validly executed. However, the Legislature then passed Appropriations Bills purporting the revoke the sale of the ITD Campus. The Appropriation[s] Bills changed the execution of the policy but did not change or set the policy itself. As a result, the Surplus Statute says "do," while simultaneously the Challenged Provisions say, "do not." The Executive Agency Respondents cannot comply with one without violating the other. The core issue is whether the Legislature may constitutionally revoke or amend a general law through an appropriation. This issue is of utmost importance interest [sic] to the Executive Agency Respondents.

As described in their response brief, the Department of Administration and ITD are the agencies directly affected by the appropriations bills. They have alleged that the bills interfere with the authority granted to them by law. The bills in question also concern their budgets and, in ITD's case, the location of its headquarters, offices, and testing facilities. The bills also affect real property owned by ITD. While both agencies would likely have standing to bring a lawsuit against the legislature for the alleged constitutional violations in their respective appropriations bills, they have not done so. We conclude that Petitioners have failed to establish that there is no other party with standing to pursue the constitutional claim raised in the Petition.

To be clear, our opinion today does not decide whether the legislature exceeded its constitutional authority in passing the appropriations bills. It also does not decide whether a party with standing would be entitled to the requested writs. Our decision is based solely on our

conclusion that Petitioners do not have a legally enforceable right to purchase the ITD Campus and as a result, they do not have standing to file this action.

### III.    CONCLUSION

For the foregoing reasons, the Petition for a Writ of Prohibition and a Writ of Mandate is dismissed.

Chief Justice BEVAN, and Justices BRODY, MOELLER, and MEYER CONCUR.